IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2009 Session

**BERNARD HUGHES v. DEMAR HUDGINS**

**Appeal from the Circuit Court for Hamilton County**
**No. 07-C-795      Ward Jeffrey Hollingsworth, Judge**

_____

**No. E2008-01385-COA-R3-CV - FILED AUGUST 17, 2009**

_____

The plaintiff claimed that he suffered neck and back injuries after the automobile in which he was riding was rear-ended by the defendant's automobile. The defendant admitted breach of the standard of care, but the jury found that the plaintiff had suffered no damages as the result of the accident, and he was not awarded any recovery. The trial court awarded the defendant $645.95 in discretionary costs to cover the court reporter fees he incurred for depositions. The plaintiff argues on appeal that there was no material evidence to support the jury's verdict. For his part, the defendant argues that the trial court erred in declining to award him all of the discretionary costs he requested. We affirm the jury verdict, but we remand the issue of the award of discretionary costs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Vacated in Part**

PATRICIA J. COTTRELL, P.J.,M.S., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined. FRANK G. CLEMENT, JR., concurring in part and dissenting in part.

John W. McClarty, Jeffrey W. Rufolo, Chattanooga, Tennessee, for the appellant, Bernard Hughes.

Scott A. Rhodes, Brentwood, Tennessee, for the appellee, Demar Hudgins.

**OPINION**

**I. A NEGLIGENCE COMPLAINT**

The incident from which this case arose occurred on February 18, 2007, when an automobile in which plaintiff Bernard Hughes was riding as a passenger was rear-ended at a Chattanooga intersection by an automobile driven by defendant Demar Hudgins. Mr. Hughes claimed that he immediately felt pain in his neck and back. He called 911, and an ambulance arrived on the scene and brought Mr. Hughes to the emergency room at Parkridge Hospital.

Mr. Hughes was examined and x-rayed, given a prescription for Lortab and discharged with instructions to rest, to use ice on the affected area and to contact his regular doctor after seven days. He subsequently went to his doctor and underwent a series of facet injections and three months of physical therapy before being released from treatment.

On July 5, 2007, Mr. Hughes filed a negligence complaint against Mr. Hudgins in the Circuit Court of Hamilton County and requested a jury trial. He claimed that the damages he incurred as a result of the accident included medical expenses of over $12,000 as well as mental and emotional distress. Mr. Hughes asked for a total of $45,000 in compensatory damages. Mr. Hudgins filed an answer on August 3, 2007. He admitted he had been at fault for the accident, but asserted that he had no knowledge of the injuries claimed by the plaintiff. After taking the deposition of his treating physician, Mr. Hughes amended his complaint to increase his *ad damnum* to $100,000.

The jury trial was conducted on April 30, 2008 and May 1, 2008. The only witnesses to testify aside from the parties themselves were Mr. Hughes' nephew, Thomas Hall, who was the driver of the car in which Mr. Hughes rode on the day of the accident, and Bernadette Hughes, the mother of Bernard Hughes. Mr. Hall testified that he was stopped at a red light when his car was hit from behind, and he described the impact of the collision as ". . . a hard impact, very hard impact." He acknowledged that he himself was not injured in the accident, but he testified that he could tell that his uncle was hurt, and that he noticed "like a little swelling around his neck."

The proof showed that at the time of trial Mr. Hughes has been on Social Security disability for at least fifteen years because of depression and suicidal tendencies, and that he lived with his mother. Bernadette Hughes testified that the day after the accident her son stayed in bed, that he walked "kind of stiff" afterwards, and that she put ice on his neck as the doctor instructed. She also testified that before the accident Mr. Hughes used to cut the grass and do little repairs around the house, but "he doesn't do much of that now," but mainly stays in his room.

Mr. Hughes testified that he was holding his cell phone at the time of the accident, and that the impact made the phone fly out of his hands and into the back seat. He also testified that he immediately felt a great deal of pain "on my neck on the left side and towards the back." After he was discharged from the emergency room, his mother drove him home. Mr. Hughes testified that he was able to sleep after taking his pain medication, but that he woke up in the middle of the night to take more, and that he was sore the next day and in the days that followed.

Mr. Hughes described his subsequent course of treatment and acknowledged that his condition has improved, but claimed that he still has a lot of problems with the left side of his neck, which affect his sleeping and prevent him from doing a lot of things he would like. He also testified to a long history of medical problems which preceded the accident at issue and to treatment for those problems. These included a lifting injury at work in the 1990's, being stabbed in the lung, cancer surgery on his neck, and physical therapy and injections for pain in his lower back, neck and shoulder in 2004 after an auto accident. Additional evidence as to the plaintiff's prior medical history as well

as his condition after the most recent accident came from the deposition testimony of two doctors. We will discuss the deposition testimony in the next section of this opinion.

When Mr. Hudgins took the stand, he testified that he was going 15 to 20 miles an hour as he approached the stop light at the intersection when a car suddenly turned in front of him, causing him to swerve into the adjoining lane and hit the car in which Mr. Hughes was riding. His girlfriend's one-year old daughter was in the car with him. Mr. Hudgins immediately checked to see if she was okay, but he noticed "nothing different from before the accident," and that she did not cry or get upset. Photographs taken after the accident and entered into evidence show that the car in which Mr. Hughes rode had its trunk pushed in and that Mr. Hudgins' car had a dent on the left front side.

Mr. Hudgins parked his car and immediately went over to Mr. Hall's car to ask if he needed to call the police and if everyone was okay. Mr. Hughes had his phone in his hand and told him that he had already called the police and that everything was okay. When the ambulance came, Mr. Hughes got out of the car under his own power and was escorted by a E.M.T. as he walked over to the ambulance and got onto a stretcher.

At the conclusion of proof and of closing arguments, the trial court delivered the final jury instructions. Since the defendant admitted fault for the accident, the court told the jury that it would have two questions at most to answer. These are shown in the Jury Verdict Form reproduced below:

**JURY VERDICT FORM**

Defendants have admitted liability.

1.      Do you find all or any of the injuries suffered by Bernard Hughes were legally caused by the accident which occurred on February 18, 2007?

_____                        _____
            YES                                                      NO

2.      If your answer to Question 1 was yes, what is the amount of damages awarded to Bernard Hughes?

$_____

After deliberation, the jury concluded that the answer to Question 1 was "NO." The verdict was read into the record, and Mr. Hughes' attorney was allowed to poll the individual jurors. The poll confirmed that the verdict was unanimous. The court entered an order of judgment for the defendant in accordance with the verdict. The jury form was attached to the judgment, and court costs were taxed to the plaintiff.

Mr. Hughes filed a motion for new trial on May 19, 2008. Shortly thereafter, Mr. Hudgins filed a motion for discretionary costs, listing court reporter expenses at trial and at deposition and other expenses related to the deposition of Dr. Lundy, for a total of $10,911.45. The trial court denied the plaintiff's motion for new trial, and partially granted the defendant's motion for discretionary costs, awarding him $645.95 for court reporter expenses related to the deposition of Dr. Parham and the deposition of Mr. Hughes. This appeal followed.

## II. THE JURY VERDICT

### A. PHYSICAL INJURY

Because this case was tried to a jury, Mr. Hughes faces a heavy burden on appeal. Findings of fact by a jury in civil actions shall be set aside "only if there is no material evidence to support the verdict." Tenn. R. App. P. 13(d). Our Supreme Court described in greater detail the standard to be used when reviewing a jury verdict on appeal:

> The appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury.

*Forrester v. Stockstill*, 869 S.W.2d 328, 329 (Tenn. 1994) (citing *Crabtree Masonry Co. v. C & R. Construction Co.*, 575 S.W.2d 4, 5 (Tenn. 1978)).

In his appellate brief, Mr. Hughes argues that the jury verdict was the result of "passion or unaccountable caprice," because Mr. Hudgins admitted fault and there was a considerable amount of evidence to indicate that Mr. Hughes had been injured in the accident of February 18, 2007. Mr. Hughes cited his own testimony and that of his nephew and his mother, and he also relied on the deposition testimony of his primary care doctor, Dr. Bernard L. Parham, who treated him after the accident.

Dr. Parham's videotaped deposition was played for the jury. The doctor, who operates an urgent care clinic, testified that when Mr. Hughes came to see him one week after the accident, he was as "stiff as a board." Dr. Parham immediately began a course of injections to the patient's cervical, thoracic and lumbar spines in order to decrease inflammation and promote mobility. He also referred him to a physical therapist for further treatment. He testified that all the treatment he administered to Mr. Hughes was reasonable and necessary, and that as a result of the treatment Mr. Hughes' condition has improved, but that "he still has tenderness."

Dr. Parham was questioned about the emergency room report on Mr. Hughes. It recited that Mr. Hughes had been brought in after a motor vehicle accident with complaints of pain. His vital signs were reported as normal. X-rays of his left shoulder, cervical spine and lumbar spine were also normal. He was reported to be alert and not to be in acute distress. His pain was listed as mild. Although he appeared at the ER in a cervical collar, the physician record reported his neck to be "non-tender." However, in the nursing record, the box for tenderness was checked, and the notation "near shoulder" was inked in. No other negative findings were reported. The nursing notes stated that Mr. Hughes was joking with the staff as he left the ER and that he declined the use of a wheelchair. Dr. Parham stated that in his opinion the ER records were not reliable, and that "it looks like sloppy work to me."

Under cross-examination, Dr. Parham acknowledged that Mr. Hughes had suffered from numerous medical problems prior to the accident, including neck and shoulder pain, but the doctor claimed that the accident "exacerbated it tremendously." Dr. Parham also testified that even before the accident he had injected pain medication into Mr. Hughes' cervical, thoracic and lumbar spine a total of seven or eight times, most recently in September of 2006. Dr. Parham was also questioned about a CT scan and x-rays performed on Mr. Hughes on March 15, 2007, which showed the existence of mild degenerative disc disease at C5 and 6, and he stated that Mr. Hughes "will have problems for life."

As the above account indicates, the jury heard testimony from which it could have concluded that Mr. Hughes suffered injuries for which Mr. Hudgins was legally responsible. However, it reached the opposite conclusion. We note that "[i]f there is material evidence to support the verdict, the verdict and judgment must be affirmed, even if there is testimony or evidence supporting the appellant's position." *Dixon v. Cobb*, M2006-00850-COA-R3-CV, 2007 WL 2089748 at *4 (Tenn. Ct. App. July 12, 2007) (no Tenn. R. App. P. 11 application filed) (citing *City of Chattanooga v. Ballew,* 354 S.W.2d 806, 809 (Tenn. Ct. App. 1961)). In this case, evidence supporting the verdict was furnished by the deposition testimony of Dr. McKinley Lundy, which was read into the record.

Dr. Lundy, a physician certified in the evaluation of disability and impairment, was retained by the defendant to perform a physical examination of the plaintiff and to review his medical records. In his deposition, which was read to the jury, he testified that he performed a thorough physical examination of Mr. Hughes on April 7, 2008, which included questioning about his medical history prior to and after the accident of February 18, 2007. He also examined the voluminous records of eighteen health care providers who had treated Mr. Hughes between 1997 and 2007, including doctors, clinics, and therapists, and he reviewed the same emergency room report that Dr. Parham was questioned about.

Dr. Lundy noted that the emergency room report documented subjective complaints of pain by Mr. Hughes. He observed, however, that medical science has no instruments to measure or detect pain, and that in the absence of objective physical findings, reports of pain by themselves did not necessarily indicate injury or damage to the person. Dr. Lundy testified that all the physical findings in the ER report were normal except for the nurse's notation of muscle tenderness around the left

shoulder, and that it was unclear whether that notation referred to an objective finding or to a subjective complaint.

The medical records showed that Mr. Hughes has a long history of neck and back pain, as well as headache. Other previously reported medical conditions included lightheadedness, dizziness, acid reflux, ankle pain, and burning and itching in both ears. In 2005, a tumor was diagnosed on his left parotid gland, which was surgically removed. During physical examination, Mr. Hughes reported to Dr. Lundy that he continued to have pain in his neck, upper back and shoulder, as well as intermittent migraine headaches. Dr. Lundy found that Mr. Hughes had a good range of spinal motion, with no spasm or muscle tightness in the cervical area, and no muscle atrophy on either shoulder. The patient's blood pressure, pulse and respiration were normal.

Dr. Lundy reported that when he performed a light or superficial palpation of the left cervical paravertebral muscles on Mr. Hughes' back, Mr. Hughes reported on a scale of one to ten, "increased pain from a seven up to an eight or a nine or a ten." Dr. Lundy testified that this was not an expected finding on light palpation one year after an accident. He went on to say that deep palpation might evoke such a pain response, but not superficial palpation. Similarly, when Dr. Lundy performed an "axial compression test" by placing gentle pressure on the top of Mr. Hughes' head, that produced a complaint of left upper back pain and lower back pain. Dr. Lundy described that reaction as unusual and stated that there was no physiological or anatomical reason for that to occur.

Dr. Lundy was also questioned about the facet injections administered to Mr. Hughes both before and after the accident, which Dr. Parham testified were "reasonable and necessary." Dr. Lundy testified that the medical guidelines for treatment of neck and upper back pain do not include facet injections, and he stated that such injections are not recommended for complaints such as those presented by Mr. Hughes.

At the conclusion of his deposition, Dr. Lundy acknowledged that an accident like the one from which this case arose has the potential to exacerbate a pre-existing injury, but that since Mr. Hughes had suffered from the same symptoms prior to the accident as afterwards, there was no way to apportion those symptoms between the accident from which this case arose and earlier incidents and medical conditions. Dr. Lundy also stated that he found many inconsistencies in the explanations Mr. Hughes offered about his prior medical history, his use of pain medication, and his current symptoms, so that he had "a difficult time with his credibility."

The testimony of Dr. Lundy casts doubt on the testimony of Dr. Parham that Mr. Hughes suffered a physical injury from the accident. It also raises genuine questions as to the intensity, the duration, and even the existence of the pain reported by Mr. Hughes, on the reasonableness and necessity of the medical care he received after the accident, and whether any pain he did experience was derived from that accident, rather than from earlier traumas. Consequently, there is material evidence to support the jury's verdict that Mr. Hughes did not suffer any physical injury for which Mr. Hudgins was legally responsible as a result of the accident of February 18, 2007.

## B. MEDICAL EXPENSES

At oral argument, Mr. Hughes' attorney did not focus on the question of physical injury but rather on the question of medical expenses related to his client's visit to the emergency room.[1] These included a bill of $785 for ambulance services and $1,229 for emergency room services. He contended that since Mr. Hudgins admitted fault for the accident, and since Mr. Hughes was brought by ambulance immediately after the accident to be checked out in the emergency room, Mr. Hughes is at the very least entitled to recover those costs as damages.

Mr. Hughes relies for this proposition upon two cases from the Western Section of this court. In *Newsom v. Marcus,* 588 S.W.2d 883 (Tenn. Ct. App. 1979), a woman filed suit for personal injuries that she allegedly suffered as the result of a motor vehicle accident, and her husband added a claim for medical expenses and loss of consortium related to the accident. The court directed a verdict for the plaintiffs on the question of liability. The proof showed that the impact of the collision was slight. The jury found that the wife did not suffer any new injury nor any aggravation of her pre-existing back problems as a result of the collision and accordingly did not award her any damages. But it did award $950 to her husband, without explanation.

The couple appealed, contending that the verdict was both inconsistent and contradictory. This court deduced that the award to the husband was for emergency room expenses, and, citing a number of cases from other jurisdictions, it stated that "it has been held that a party is entitled to recover reasonable medical expenses for examination, etc., in an effort to determine if personal injuries were sustained as a result of defendant's negligence, even though it develops that the party suffered no personal injury." *Newsom v. Marcus,* 588 S.W.3d at 887. We accordingly affirmed the verdict.

In the unpublished case of *Littles v. Laine*, No. 02A01-9806-CV-00148, 1999 WL 281311 (Tenn. Ct. App. May 7, 1999) (no Tenn. R. App. P. 11 application filed), this court extended the scope of the reasoning of *Newsom v. Marcus*, by applying it to a case in which the jury declined to award any recovery to one of the plaintiffs. That case also involved a collision in which the defendant's liability was established. While the jury awarded $760 to the driver of the car that was struck, it declined to award damages to his passenger, even though, on the day after the accident, he sought treatment at a clinic for neck, back and wrist problems. We reversed as to the passenger, holding that the passenger was "entitled to the reasonable medical expenses required to determine if injuries were sustained," 1999 WL 281311 at *2, and we remanded the case to the trial court for a new trial on damages only.

However, in *Gibson v. Francis*, No. E2003-02226-COA-R3-CV, 2004 WL 1488541, (Tenn. Ct. App. June 30, 2004) (no Tenn. R. App. P. 11 application filed) the Eastern Section of this Court was faced with a similar situation but reached a different conclusion. In that case, the jury returned

---

[1] The attorney who presented the plaintiff's case to the jury, John McClarty, drafted his appellate brief. A different attorney, Jeffrey W. Rufolo, delivered the oral argument.

a $6,900 verdict for damages to the plaintiff's automobile, but declined to award her any damages for personal injuries. The proof showed that the plaintiff did not go to the emergency room after the accident, but went to her doctor later that day with a complaint of back pain. He referred her to an orthopedist, who was unable to reach a medical diagnosis that would corroborate her subjective complaints of pain. This court affirmed the jury verdict. Although we did not directly refer to medical expenses, we stated that,

> It was the duty and prerogative of the jury to assess the credibility of the witnesses, and the jury was at liberty to either believe or disbelieve the plaintiff's subjective complaints. The jury apparently chose not to believe the plaintiff's testimony regarding her pain, its origin, and/or its effect on her. If the jury disbelieved the plaintiff - apparently it did - then the plaintiff failed to establish her personal injury claim by a preponderance of the evidence. As a consequence of this, there is material evidence to support the jury's verdict.

*Gibson v. Francis*, 2004 WL 1488541 at *5.

Relying on the *Littles* case, Mr. Hughes urges us to adopt a bright line rule that if a party is involved in an accident caused by the fault of another and he goes to the emergency room after the accident, he should automatically be entitled to recover the expenses incurred to determine if he has been injured, even if no injury is diagnosed. While a strong argument might be made for such a rule, we believe there is an even stronger argument for letting the question remain in the hands of the jury.

### III. DISCRETIONARY COSTS

Mr. Hudgins argues on appeal that the trial court erred in failing to award him all his discretionary costs. Under Tenn. R. Civ. P. 54.04(2) such costs are "allowable only in the court's discretion," and they include "reasonable and necessary court reporter expenses for depositions and trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees for depositions or trials, and guardian ad litem fees."

After the jury verdict and judgment were rendered, Mr. Hudgins filed a Motion for discretionary costs, in the total amount of $10,911.45. The court awarded him $645.95 for the court reporter expenses incurred for the deposition of Dr. Parham ($250.50) and the deposition of Mr. Hughes ($395.45). The award excluded compensation for the independent medical evaluation of Mr. Hughes by Dr. Lundy ($6,265), expenses related to the deposition of Dr. Lundy ($3,112.50), court reporter expenses related to the deposition of Dr. Lundy ($628) and the court reporter's per diem for trial ($260).

Our Supreme Court has ruled that the fee of a doctor who was retained as an expert to evaluate a workers' compensation claimant was not recoverable as a discretionary cost under Tenn. R. Civ. P. 54.04(2) because such fees are not mentioned in the rule. "The rule specifically limits discretionary costs with regard to expert witnesses to their fees for testifying." *Miles v. Voss Health*

-8-

*Care Center*, 896 S.W.2d 773, 776 (Tenn. 1995). *See also Massachusetts Mutual Life Ins. v. Jefferson*, 104 S.W.3d 13, 38 (Tenn. Ct. App. 2002). Mr. Hudgins conceded at oral argument that he was not entitled to reimbursement for Dr. Lundy's independent medical examination. He contends, however, that the trial court erred in not awarding him his other discretionary costs, which do fall within the ambit of rule 54.04(2).

Rule 54.04(2) specifies that such costs are allowed "only in the court's discretion" and the appellate courts have stated many times that they will not alter a trial court's ruling on discretionary costs absent a clear abuse of that discretion. *Trinity Industries v. McKinnon Bridge Co.*, 77 S.W.3d 159, 180 (Tenn. Ct. App. 2001). *See also Perdue v. Green Branch Mining Co.,* 837 S.W.2d 56, 60 (Tenn. 1992); *Lock v. National Union Fire Insurance,* 809 S.W.2d 483, 490 (Tenn. 1991).

In determining whether an abuse of discretion has occurred, appellate courts must not merely substitute their judgment for that of the trial court. *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). "Appellate courts will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). Where a court has improperly construed or applied the applicable legal principles, appellate courts may properly reverse the trial court's decision.

The award of discretionary costs stems from a desire to make the prevailing party whole. *Massachusetts Mutual Life Ins.,* 104 S.W.3d at 33; *Scholz v. S.B. Int'l, Inc.,* 40 S.W.3d 78, 85 (Tenn. Ct. App. 2000). Mr. Hudgins points to a series of cases which stand for the proposition that generally the courts should award discretionary costs to a prevailing party if the costs are reasonable and necessary, so long as the prevailing party has filed a timely and properly supported motion and has not engaged in conduct during the litigation that justifies depriving it of the costs it is requesting. *Massachusetts Mutual Life Ins.* at 35-36. *See also  Trundle v. Park,* 210 S.W.3d 575, 582 (Tenn. Ct. App. 2006); *Waggoner Motors v. Waverly Church of Christ*, 159 S.W.3d 42, 65-66 (Tenn. Ct. App. 2004).

As this court has stated,

> Generally, trial courts award such [discretionary] costs to whichever party ultimately prevails in the lawsuit, provided the prevailing party has filed a timely, properly supported motion. The successful party is not, however, automatically entitled to an award of costs. Instead, trial courts are free to apportion costs between the litigants as the equities of each case demand. Accordingly, if any equitable basis appears in the record which will support the trial court's apportionment of costs, this court must affirm. Moreover, on appeal, the appellant bears the burden of showing that the trial court abused its discretion in its assessment of costs.

*Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998) (citations omitted). *See also Milliken v. Crye-Leike Realtors*, No. M1999-00071-COA-R3-CV, 2001 WL 747638 at *11 (Tenn. Ct. App. July 5, 2001) (Rule 11 perm. app. denied Dec. 10, 2001).

In this case, Mr. Hudgins was the prevailing party because the jury found that he did not cause Mr. Hughes any injury for which Mr. Hudgins was legally responsible. No evidence has been presented, nor has any suggestion been made, that Mr. Hudgins has acted in any way that would justify the court in depriving him of the costs he incurred. In fact, by admitting fault at the outset he spared Mr. Hughes the costs that otherwise would have been required to establish that element. Nonetheless, the trial court awarded Mr. Hudgins only some of the discretionary costs for which reimbursement is available under Rule 54.04(2). The court did not explain its reasoning for limiting the award of costs in the way that it did. We therefore must search the record to determine if it contains any equitable basis to support the trial court's apportionment of costs. If it does, this court must affirm. *Sanders v. Gray,* 989 S.W.2d at 345.

Mr. Hughes does not claim that the fees in question were unreasonable or were unnecessary. He simply argues that he has been disabled for several years and that awarding such costs could create a chilling effect on future litigation. Any consideration of such facts and allegations must be balanced against the burdens imposed upon Mr. Hudgins by the decision Mr. Hughes made to file suit and to ask for $100,000 in compensation for his alleged injuries. It is clear that Mr. Hudgins had to procure the deposition testimony of a medical expert witness like Dr. Lundy in order to mount an effective response to the deposition testimony of Dr. Parham. As we noted above, Rule 54.04 authorizes the court to award reasonable and necessary expert witness fees and court reporter expenses for depositions to the prevailing party.

The basis for the trial court's decision to award Mr. Hudgins some, but not all, of his discretionary costs is unclear from the record. Because of the discretion given to the trial court and its authority to apportion costs "as the equities demand," we must remand this matter to the trial court for consideration of the award of discretionary costs.

**IV.**

The judgment of the trial court is affirmed in part and vacated in part. We remand this case to the Circuit Court of Hamilton County for any further proceedings necessary, consistent with this opinion. Tax the costs on appeal to the appellant, Bernard Hughes.

_____
PATRICIA J. COTTRELL, P.J., M.S.