**Frank TRUNDLE, Jr., and Kathy Trundle**

v.

**Edward PARK.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

May 25, 2006 Session.

July 18, 2006.

Permission to Appeal Denied by Supreme Court Dec. 18, 2006.

George A. Dean, Nashville, Tennessee, for appellant.

Marvin Berke and Megan C. England, Chattanooga, Tennessee, for appellees.

## OPINION

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

The Chancellor ordered demolition of defendant's dwelling on the ground that it was in violation of restrictive covenants, and awarded discretionary costs to plaintiffs. We affirm in part and vacate in part.

In this action, the Chancellor ordered demolition of defendant's residence, which was constructed in violation of restrictive covenants, and defendant has appealed.

On February 12, 1997, defendant purchased a lot in the Stuart Crest subdivision in Chattanooga, which is subject to various restrictions. One of these restrictions limits construction on the lot to "one detached, single family dwelling, not to exceed one story in height, and attached carport or garage." On April 17, 1997, defendant applied to the city of Chattanooga for a building permit to build what was described as a three story residence.

On June 20, 1997, plaintiffs filed a Complaint against defendant, averring that defendant was building a structure which did not comply with the subdivision's recorded restrictions. The action requested the Chancery Court to issue a restraining order restraining defendant from proceeding further with the construction. A Restraining Order was issued, and following a hearing on the issues, the Chancery Court issued an Order allowing the defendant to build a structure which was to comply with the applicable building codes and restrictions, and consisting of only one story. The Order stated that any structure failing to meet those conditions would be demolished. The Order was entered on October 29, 1997.

On February 5, 1998, plaintiffs petitioned to require demolition of the structure, on the grounds that defendant had not complied with either the restrictions or the building codes and had built a structure with more than one story. Following a hearing in September 2002, the Chancellor concluded that the defendant's structure was a three-story house, and stated:

After reviewing the history of this case and the number of times that [the Defendant] has been told by the Court about the necessity of complying with the subdivision restrictions and specifically after he was admonished that if he failed to comply with them, if he built a house of more than one story that he would be compelled to demolish it, it seems equitable and reasonable under the peculiar facts of this case to require [the Defendant] to demolish the house.

The Chancellor ordered the defendant to demolish the structure, and reserved the issue of attorney's fees for a later decision. On October 16, 2002, plaintiffs filed a motion for attorney's fees and expenses, and on December 9, 2002, the Chancery Court entered an Order awarding the plaintiffs attorney's fees in the amount of $15,320.00 and expenses in the amount of $18,673.09.[1] Because the Chancery Court reserved the issue of attorney's fees, the Court deemed this Order to be the final order from which the defendant's appeal time ran.

On January 7, 2003, defendant filed a Rule 59 Motion for a new trial or alternatively to alter and amend the prior orders. This motion came to be heard at the regular docket call on January 27, 2003, but no one appeared to prosecute the motion. Apparently, according to local practice, the motion was stricken, and on February 12, 2003, the defendant filed another Rule 59 Motion. At a hearing on February 24,

---

1. The Chancery Court's order apparently included the attorney's fees in the expense total.

2003, defendant admitted that his home did not comply with the restrictions, but asked the Court for an opportunity to modify the structure according to the restrictive covenants. Defendant also asserted that attorney's fees were not permissible under the covenants' language. The Court gave the defendant 21 days to submit plans to modify the existing structure. If the plans would permit the structure to comply with the restrictive covenants, the Court would alter or amend its order of demolition. The court also asked the plaintiffs to file a brief on the issue of attorney's fees. The Court's orders were made on February 24, 2003, but were entered *nunc pro tunc* on March 11, 2004.

On March 17, 2003, the defendant filed modification plans as well as an agreement with a contractor to perform the work. The modification plans proposed lowering the pitch of the roof so that the attic's ceiling would be too low to allow habitation in the attic space. The plans also proposed removing the bedroom and the heating and cooling ducts from the garage level.

On November 30, 2004, plaintiffs filed a response to defendant's Rule 59 Motion, and argued that the Chancery Court was without jurisdiction to consider defendant's second Rule 59 Motion because it was filed more than 30 days subsequent to the final order entered on December 9, 2002. The Chancery Court responded to this argument as follows:

> The court concludes that the [first Rule 59] motion filed January 7, 2003 has not been granted or denied. The court took no action other than to decline to rule on the motion or to re-set it for argument after defendant's counsel failed to appear to argue the motion when it was scheduled on the court's motion docket. There is no final judgment until the motion is granted or denied.

On April 27, 2005, the Chancery Court entered a Memorandum and Order. Regarding the issue of attorney's fees, the Court held that plaintiffs failed to provide any basis for the allowance of attorney's fees. As for the issue of demolition, the Court held that after the proposed modifications the defendant's structure would still violate the restrictions because it would consist of only 1,688 square feet, while the restrictions required at least 3000 square feet. The Court ordered the defendant to demolish the structure and pay $3,353.09 in discretionary costs, but denied the request for attorney's fees to be assessed against the defendant.

█ These issues are raised on appeal: Whether the Chancery Court lacked jurisdiction to amend its final order?

Whether the Defendant's Notice of Appeal was timely?

Whether the Chancery Court refusal to amend its order of demolition was an abuse of discretion?

Whether the Chancery Court erred by not awarding the Plaintiffs attorney's fees?

Whether the Chancery Court erred in its award of discretionary costs to the Plaintiffs?

The trial court's ruling on a Rule 59 motion to alter or amend a judgment is reviewed under an abuse of discretion standard. *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn.Ct.App.2003). An abuse of discretion exists if the trial court applied an incorrect legal standard or reached an illogical or unreasonable decision that caused injustice to the complaining party. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001). "The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Id.* The trial court's decision will be affirmed " 'so long

as reasonable minds can disagree as to propriety of the decision made.'" *Id.* (quoting *State v. Gilliland,* 22 S.W.3d 266, 273 (Tenn.2000)). We will presume that the trial court's findings of fact are correct, unless the evidence preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). This presumption of correctness, however, does not apply to the trial court's conclusions of law. *Keaton,* 119 S.W.3d at 222.

■ Plaintiffs argue the Chancery Court did not have jurisdiction to alter the September 25, 2002 Order requiring the defendant to demolish his home or its December 9, 2002 Order awarding plaintiffs attorney's fees. Their reasoning is that the Chancery Court struck the defendant's first Rule 59 motion from the docket and the second Rule 59 motion was filed more than 30 days after the December 9, 2002 Order. Defendant argues that the first Rule 59 motion is not void simply because it was stricken from the docket.

■ When a party files a timely Rule 59 motion, the trial court retains jurisdiction over the matter until it enters an order granting or denying the motion. *Tenn. Farmers Mut. Ins. Co. v. Farmer,* 970 S.W.2d 453, 453 (Tenn.1998). The Chancellor stated that by striking the first Rule 59 motion from the docket he "took no action other than to decline to rule on the motion or to re-set it for argument." Accordingly, striking of the first motion was not a denial, and the Chancery Court retained jurisdiction to alter its earlier orders.[2]

Plaintiffs also argued that the Defendant's Notice of Appeal should have been filed within 30 days from the date that the Defendant's first Rule 59 motion was stricken from the docket. We find this issue to be without merit, because under our decision the time for appeal did not begin to run until April 27, 2005, when the Chancery Court denied in part and granted in part the Defendant's Rule 59 motion.

In the September 2002 Memorandum Opinion, the Chancery Court concluded that the defendant's structure should be demolished because it was a three-story house in violation of the subdivision restriction prohibiting structures greater than one story. In response to the defendant's Rule 59 motion, the Chancery Court gave defendant 21 days to submit "plans to modify the existing structure on Lot 2 of the resubdivision of Stuart Crest so as to comply with the restrictive covenants of the subdivision and an agreement with a contractor to perform the work set out in the plans." The Court further stated, "If the proposal would permit [the Defendant's] structure to comply with the restrictive covenants without demolition, then the Court would alter or amend the Order directing demolition." Defendant filed modification plans as well as an agreement with a contractor to perform the work. The plans stated that the home would have 1,688 square feet of living space, but after reviewing these plans the Chancery Court said that the defendant's proposal did not comply with the subdivision restrictions, i.e., the restrictions required 3,000 square feet on the main level, and ordered demolition.

---

**2.** The Plaintiffs cite *Christian v. Kennedy,* No. 03A01–9207CH00265, 1992 WL 387348 (Tenn.Ct.App. Dec.31, 1992) as persuasive authority for their argument. *Christian,* however, involves a trial court which entered further orders, *sua sponte,* 11 months subsequent to the entry of its final order. *Christian,* 1992 WL 387348 at *2. Here, the Chancery Court did not alter its prior order *sua sponte.* Rather, it altered its prior order in response to the Defendant's timely Rule 59 motion filed on January 7, 2003.

■ Defendants argue that the Chancery Court's refusal to alter or amend the Order of Demolition was an abuse of discretion, because the subdivision restrictions cited by the Court which required at least 3,000 square feet of living space, did not apply to the Defendant's lot.

The original developer of the Stuart Crest subdivision was the Chattanooga Estates Company ("CEC"). In 1955, CEC executed a list of restrictions, including a prohibition against any residence with less than 3,000 square feet of living area, but this document limited its application to lots 4 through 11 (the "1955 Restrictions"). Later in 1960, CEC conveyed lot 2 to the Defendant's immediate predecessor in title. This deed provided that lot 2 would be subject to the 1955 Restrictions, except that the minimum square footage would be 1,600 square feet, not 3,000 square feet. This record demonstrates that the Chancery Court applied an inapplicable subdivision restriction.

The Plaintiffs describe the Chancellor's mistake as a harmless factual error. However, the Court did tell the defendant that it would amend its demolition order if the defendant submitted modification plans in conformity with the applicable restrictions. When the Chancery Court evaluated these modification plans, it mentioned only one violation of the restrictions and expressed only one reason for refusing to amend the demolition order, i.e., the home would have only 1688 square feet of living space. This square footage did not violate the applicable subdivision restrictions, and the Chancery Court's decision would cause injustice to Defendant. Therefore, this determination was an abuse of discretion. *Eldridge v. Eldridge*, 42 S.W.3d 82,85 (Tenn.2001). We vacate the Trial Court's Order of Demolition.

■ The plaintiffs' Complaint requested attorney's fees, and was based upon the following language in the subdivision restrictions:

If the undersigned or any party or parties claiming thereunder shall violate or attempt to violate any of the covenants or restrictions herein provided ... it shall be lawful for grantor, or other person or persons owning any other lot or lots in said development or subdivision to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenants or conditions and either to prevent him or them from so doing, or **to recover damages or other dues** for such violation.

(emphasis added). While the Court initially awarded attorney's fees, after Defendant's Rule 59 motion, the Court held that plaintiffs failed to provide any basis for the allowance of attorney's fees, and rescinded the prior Order.

■ "Generally, attorney's fees are not recoverable in the absence of a statute or contract specifically providing for such recovery." *Kultura, Inc. v. S. Leasing Corp.*, 923 S.W.2d 536, 540 (Tenn.1996). We have previously interpreted a similar restrictive covenant as not enabling property owners to recover attorney's fees. *Hewgley v. Vivo*, No. 01–A–01–9506–CH–00266, 1997 WL 92077, at *4 (Tenn.Ct.App. 1997). The language at issue in *Hewgley* was as follows:

it shall be lawful for any other person or persons owning any real property situated in said development or subdivision to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such Covenant and to prevent him or them from so doing or **to recover damages or other dues** for such violation.

*Id.* (emphasis added). Construing this language, the Court said:

We do not construe the language of the restrictive covenant in this case as enabling property owners to collect their attorney's fees if they file suit to enforce a restriction in their deeds. The reference in the restrictive covenant to "damages or other dues" refers to the damages traditionally associated with breaches of restrictive covenants. These damages include either nominal damages or actual damages measured by the reduction in property values caused by the breach of the restrictive covenant.

We affirm the Trial Court's decision that plaintiffs are not entitled to recover attorney's fees.

The Chancery Court ordered defendant to pay $3,353.09 in discretionary costs. The defendant argues the amount includes expenses other than those permitted by Tenn. R. Civ. P. 54.04. "Pursuant to [R]ule 54.04, trial courts are vested with wide discretion in awarding discretionary costs, and this court will not interfere with such an award except upon an affirmative showing that the trial court abused its discretion." *Sanders v. Gray,* 989 S.W.2d 343, 345 (Tenn.Ct.App.1998). The Defendant bears the burden of showing that the Chancery Court's assessment of costs was an abuse of discretion. *Id.*

 "Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs." Tenn. R. Civ. P. 54.04(2).

[W]hen deciding whether to award discretionary costs under Tenn. R. Civ. P. 54.04(2), the courts should (1) determine whether the party requesting the costs is the "prevailing party," (2) limit awards to the costs specifically identified in the rule, (3) determine whether the requested costs are necessary and reasonable, and (4) determine whether the prevailing party has engaged in conduct during the litigation that warrants depriving it of the discretionary costs to which it might otherwise be entitled. The courts should not, however, base their decisions to award costs under Tenn. R. Civ. P. 54.04(2) on (1) a desire to punish the losing party, (2) whether the prevailing party is the plaintiff or defendant, or (3) the weight given to a particular witness's testimony.

The party seeking to recover its costs under Tenn. R. Civ. P. 54.04(2) has the burden of demonstrating that it is entitled to recover these costs. *Stalsworth v. Grummons,* 36 S.W.3d at 835. As a general matter, a party seeking these costs must file a timely motion and must support this motion with an affidavit detailing these costs, verifying that they are accurate and that they have actually been charged, and that they are necessary and reasonable. Once a party seeking costs under Tenn. R. Civ. P. 54.04(2) has filed its motion, the non-moving party may present evidence and argument challenging the requested costs.

*Mass. Mut. Life Ins. Co. v. Jefferson,* 104 S.W.3d 13, 35–36 (Tenn.Ct.App.2002) (footnotes omitted).

 On this record, the plaintiffs are entitled to recover their expenses that qualify as discretionary costs and are necessary and reasonable. *Id.* at 37.

 According to plaintiffs' supporting Affidavit, their discretionary costs consist of the following items:

1. Bambi Hatcher—$75.00
2. Lee & Neal Reporting—$40.00

3. Debbie L. Huntoon—$320.62

4. Chattanooga Reporters Associated—$233.11

5. Register of Deeds—$16.00

6. Register of Deeds—$10.00

7. Chattanooga Zoning Ordinance—$10.00

8. Wolf Camera & Video (Pictures)—$21.96

9. Register of Deeds—$13.00

10. Register of Deeds—$3.00

11. Hall & Associates—$151.00

12. Hall & Associates—$480.00

13. Kurt Stagmaier—$1,979.40

The Plaintiffs are clearly entitled to items 2, 3, 4, 11, and 12 because these are court reporter expenses.[3] Tenn. R. Civ. P. 54.04(2). Plaintiffs are not entitled to items 5 through 10, inclusive, because these are document and photography expenses and are not among the costs specifically identified in Tenn. R. Civ. P. 54.04(2). *Mass. Mut. Life Ins. Co.*, 104 S.W.3d at 36–37. Item 13 is the expense incurred for the services of an architect and expert witness. The affidavit lists the fee charged for Mr. Stagmaier's services, but does not specify whether this fee was incurred exclusively for appearing at a deposition or trial.[4] Although there is no dispute that some of this fee is recoverable, the Record is insufficient to determine how much of the fee is attributable to unrecoverable trial preparation expenses. Finally, item 1 is the expense incurred for the services of Bambi Hatcher. There is no indication in either the Plaintiffs' affidavit or the Record as to the nature of these services.

The Chancery Court's award of costs to the Plaintiffs for items 2, 3, 4, 11, and 12 is affirmed. The award of costs for items 5 through 10 was not appropriate, and the award of costs for items 1 and 13 is vacated and upon remand, the Chancellor will determine whether these items represent recoverable costs under the Rule.

The Court's decision not to amend its demolition order is vacated, and the Court's decision as to attorney's fees is affirmed. The Court's award of discretionary costs is affirmed in part and vacated in part.

Defendant's residence has been in violation of the lot's restrictive covenants for several years and must be brought within the requirements of the restrictive covenants with all reasonable dispatch, or demolished. Accordingly, the Chancellor is directed to appoint a Special Master, an architect, who will report to the Chancery Court within six months from the date of the appointment of the Special Master, as to whether or not defendant has brought his property into compliance with the restrictive covenants. If the Master's Report factually finds that the defendant has complied with the restrictive covenants, the action will be dismissed at defendant's expense, including the fees of the Special

---

3. The affidavit clearly describes items 4 and 2 as court reporter expenses. The Record also sheds light on the nature of these items. Item 3 was incurred to prepare the transcript of the Chancery Court's October 29, 1997 hearing. Item 4 was incurred to prepare the transcript of the deposition of Kathy Trundle. Items 11 and 12 were incurred to prepare the transcript of the Chancery Court's hearings on September 18 and 19, 2002.

4. "Only 'reasonable and necessary expert witness fees for depositions and trial' are recoverable. Thus, prevailing parties cannot recover expert witness fees for preparing for depositions or trial, no matter how reasonable and necessary these fees are." *Mass. Mut. Life Ins. Co.*, 104 S.W.3d at 38. Thus, expert witness fees are recoverable only to the extent they are for appearances at depositions or trials or for stipulated reports. Tenn. R. Civ. P. 54.04(2); *Mass. Mut. Life Ins. Co.*, 104 S.W.3d at 38.

Master. If there is a failure of compliance with the restrictive covenants, the Chancellor's Order is to be reinstated to demolish defendant's structure.

The cost of the appeal is assessed one-half to plaintiffs and one-half to defendant.