IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 11, 2010 Session

# BRENDA JOHNSON HEAD v. MICHAEL ALLEN HEAD

**Appeal from the Chancery Court for Sumner County**
**No. 2007D-341      Tom E. Gray, Chancellor**

_____

**No. M2009-01351-COA-R3-CV - Filed September 30, 2010**

_____

This is a divorce action in which Husband appeals the valuation and division of marital property, and the trial court's awards of alimony, discretionary costs, and attorneys' fees to Wife. The trial court awarded 54 percent of the marital property to Wife and 46 percent to Husband, and awarded Wife alimony *in futuro* of $6,400 per month until July 2013, at which time the alimony payments will be reduced to $4,400 per month until either party's death or Wife's remarriage. The trial court also awarded Wife discretionary costs and attorneys' fees. We have modified the trial court's valuation of certain items of marital property, which caused a modest decrease in the value of marital property awarded to Husband; however, we affirm the trial court's division of the marital property because our modification of the value of certain property is relatively modest. We affirm the trial court's award of alimony to Wife and the award of attorneys' fees; however, we reverse the award of discretionary costs and remand for a new determination of the costs that may be awarded under Tenn. R. Civ. P. 54.04(2). We deny both parties' requests for the costs of their attorneys' fees incurred on this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part, Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Russell E. Edwards and Michael W. Edwards, Hendersonville, Tennessee, for the appellant, Michael Allen Head.

Kimberley L. Reed-Bracey, Goodlettsville, Tennessee, for the appellee, Brenda Johnson Head.

# OPINION

The parties were married in 1971 and have one child who is an adult. Husband is a veterinarian and owns his own veterinary practice in Madison, Tennessee. Wife has a high school education and worked sporadically throughout the marriage.

On September 17, 2007, Wife filed for divorce citing the grounds of irreconcilable differences and inappropriate marital conduct; Wife later amended her petition to add the ground of adultery. Husband filed an answer admitting there were irreconcilable differences, but denying the allegations of inappropriate marital conduct and adultery. Husband later amended his answer to admit the adultery allegations.

During the pendency of the divorce proceedings, Wife filed a motion for temporary spousal support. An agreed order regarding spousal support was entered on June 9, 2008, in which Husband agreed to pay Wife $5,000 per month as support as well as pay the mortgage on the marital home and various other expenses of Wife, such as Wife's cellular phone bill and health insurance payments. On July 28, 2008, the trial court awarded Wife $3,000 in "litigation expenses" for the appraisal services of Pat McGuigan, who was appraising the commercial property owned by the parties. On August 29, 2008, Husband filed a motion to hold Wife in contempt for her destruction of property in her possession; the trial court later awarded Husband $3,500 for the destroyed property.

On October 28, 2008, Wife filed a motion to have $20,000 she was to receive from a personal injury, product liability settlement with DOW Chemical Company declared her separate property. The trial court ruled that the issue of whether the money was separate or marital property would be resolved at the final hearing, but allowed Wife to use the $20,000 in the interim to pay her attorney's fees.

The final hearing was held on January 21, 2009. The parties stipulated that the Wife was to be awarded a divorce on the grounds of Husband's adultery. They also stipulated to the value of the marital residence, and the values of both Husband and Wife's IRA accounts, ROTH IRA accounts, and SEP accounts.

On March 24, 2009, the Final Decree of Divorce was entered. The trial court designated the DOW proceeds as Wife's separate property and designated Husband's inheritance, along with real property purchased using the inheritance, as Husband's separate property. The trial court then valued and divided the marital property, awarding approximately 54 percent of the marital estate to Wife.

Wife was awarded the marital residence valued at $330,000; a 50 percent interest in a Florida property; a 2005 Corvette; a 2003 Denali; a 1998 Harley Davidson Sportster; Wife's IRA, ROTH IRA, and SEP accounts; a Regions Bank checking account; a joint DWS Money Market account; American Airlines air miles; household goods valued at $14,522.00; $1,747.54 from an escrow check; and 78 percent of Husband's SEP account amounting to $207,198.00. The total value of the marital property awarded to Wife was $909,908.54.

Husband was awarded the Madison Veterinary Clinic; the Nashville Pet Emergency Clinic; a 50 percent interest in the Florida property; a 2004 Chevrolet truck; a 2005 Haulmark trailer; a 1995 Haulmark Trailer; a 1964 Corvette; a 2002 Harley Davidson Road Glider; a 1990 Harley Davidson FXR; Tennessee Titans personal seating licenses; household goods and furnishings in the amount of $21,382.00; a Regions Bank account with $1,053.00; a Michael Head account with $1,638.00; the Madison Veterinary Clinic Regions Bank account; a portion of the escrow check in the amount of $1,256.16; Husband's ROTH IRA and IRA accounts; 22 percent of Husband's SEP account; American Airlines air miles; and Knox County bonds valued at $50,000. The total value of the marital property awarded to Husband was $790,019.90.

The trial court awarded Wife alimony *in futuro* of $5,000 per month beginning in April 2009 and continuing until July 2013, at which time Wife's alimony payments would be reduced to $3,000 per month until either party's death or Wife's remarriage.

On April 2, 2009, Wife filed a motion to alter or amend the final divorce decree requesting that the trial court address the issue of COBRA post divorce and attorneys' fees, and filed a motion for discretionary costs. Husband also filed a motion to alter or amend contending that the trial court erred in designating the $50,000 of Knox County bonds as marital property, asking that the value of the household goods awarded to Husband be reduced, and requesting that he be reimbursed for the $3,000 paid to appraise the commercial property. A hearing on the motions was held on April 20, 2009 and the trial court issued a Memorandum and Order on June 3, 2009. In the opinion, the trial court designated the Knox County bonds as Husband's separate property and granted Husband's request for reimbursement of the $3,000 paid to the appraiser; however, the court denied Husband's request for the revaluation of the household goods.[1] The court also awarded Wife $40,172.00 in attorneys' fees, $10, 827.75 in discretionary costs, costs of the court reporter, and costs of the deposition of Wife's witness, Dr. Bazuldua. The award of alimony *in futuro* was amended to increase her payments to $6,400 per month until July 2013 at which time the amount

---

[1]Following the modifications by the trial court, Husband's marital property award amounted to $761,150.54.

would decrease to $4,400. The increase was intended to cover the costs of Wife's health insurance. Husband filed a timely appeal.

## ANALYSIS

On appeal, Husband challenges the division of the marital property, the award of alimony *in futuro*, the award of discretionary costs, and the award of attorneys' fees to Wife. Husband and Wife both request that this court award them the costs of their attorneys' fees on appeal.

## DIVISION OF MARITAL PROPERTY

The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Tennessee is a "dual property" state, thus, property cannot be included in the marital estate unless it is deemed "marital property." *Smith v. Smith*, 93 S.W.3d 871, 875-76 (Tenn. Ct. App. 2002). The definition of "marital property" is found at Tenn. Code Ann. § 36-4-121(b)(1)(A). "Separate property," as that term is defined in Tenn. Code Ann. § 36-4-121(b)(2)(A)-(F), is not marital property. Therefore, separate property should not be included in the marital estate. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). Property classification is a question of fact. *Bilyeau v. Bilyeau*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005). Thus, we review the trial court's classification using the familiar standard of review in Tenn. R. App. P. 13(d).

Once property has been classified as marital property, the court should place a reasonable value on the property that is subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003). The parties have the burden to provide competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *Id.* (citing *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995); *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987)). Decisions regarding the value of marital property are questions of fact and we presume the trial court's factual determinations are correct unless the evidence preponderates against them. *Id.* (citing *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996)).

Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller*, 81 S.W.3d at 775. A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). "Dividing

-4-

a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c)." *Kinard*, 986 S.W.2d at 230. "Trial courts have wide latitude in fashioning an equitable division of marital property." *Id*. Therefore, this court accords great weight to the trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

MARITAL PROPERTY IN DISPUTE

Husband challenges the values assigned to the following marital property: the Madison Veterinary Clinic, the Madison Veterinary Clinic Regions Bank account, the household goods and furnishings, the 2005 Corvette, the 1964 Corvette, the 1990 Harley Davidson FXR, the Haulmark trailers, and the Tennessee Titans personal seating licenses.

1. Madison Veterinary Clinic

Husband's first challenge is to the value of the fixtures and equipment of his veterinary practice, which the court found to be $28,947. The court's finding was based on the testimony of John Richard Garrett, who valued the fixtures at $28,947, which was based in part upon an assessment by another expert, Ethan Massa.

Husband contends that the testimony of Mr. Massa should have been excluded because he was not qualified to give an opinion, his testimony was not trustworthy, and his testimony did not substantially assist the trier of fact.[2] Husband also contends that he is in a better position to value the fixtures than Mr. Massa because Husband "is a licensed veterinarian, knows the market, and is around the fixtures on a daily basis." It is Husband's opinion that the true value of the fixtures and equipment is $19,885.

Mr. Massa has worked as an appraiser since 2002 and was employed as an appraiser by John Hildreth and Associates. Mr. Massa testified that he was certified with the Certified Appraisers Guild of America, and has appraised veterinary equipment in three prior cases within the past six years, once for a divorce action and twice for bankruptcy actions. The admissibility of expert testimony is within the discretion of the trial court. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). On appeal, the trial court's ruling on whether to permit or exclude such testimony may only be overturned if the discretion is arbitrarily exercised or

---

[2]At trial, Husband objected to Mr. Massa's testimony as an expert witness, which the trial court overruled.

abused. *Id*. Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Id*. We find nothing in the record to indicate that the trial court abused its discretion in admitting the testimony of Mr. Massa, an experienced appraiser, on the valuation of the veterinary equipment.

We also find no reason to disturb the trial court's valuation of the equipment and fixtures in the clinic. The value of the equipment and fixtures was disputed and the trial court chose to adopt the values placed upon the equipment by Wife's two experts over that of Husband's assessment, which notably excluded $7,500 worth of software. As we noted above, decisions regarding the value of marital property are questions of fact and we presume the trial court's factual determinations are correct unless the evidence preponderates against them. *Kinard*, 986 S.W.2d at 231 (citing *Jahn*, 932 S.W.2d at 941).

The value assigned to the Madison Veterinary Clinic was supported by the testimony of Mr. Massa and Mr. Garrett, and, thus, we will not disturb the trial court's ruling.

## 2. Veterinary Clinic Bank Account

The trial court made a separate valuation of the funds on deposit in the Veterinary Clinic's checking account at Regions Bank. The court valued this asset at $27,603. Husband, however, contends this was error because the $27,603 was already included in the determination of the value of the veterinary clinic. We agree.

Husband correctly notes that the value of the checking account was included in Mr. Garrett's valuation of the Veterinary Clinic. While the testimony of Mr. Garrett may not have been sufficiently clear, a review of the Valuation Report prepared by Mr. Garrett, which was submitted as an exhibit, clearly indicates that the funds on deposit in the checking account were included in Mr. Garrett's overall valuation of the clinic. Therefore, it should not be valued a second time as a marital asset.

We, therefore, find the evidence preponderates against the award of the checking account as an additional asset. Accordingly, the total value of the marital property awarded to Husband should be reduced by $27,603.

## 3. Household Goods and Furnishings

The trial court determined that the value of the household goods and furnishings was $21,382. Husband asserts the value is only $17,835.

Husband contends the trial court erroneously adopted the valuation of Wife's expert, Connie Sue Davenport, because Ms. Davenport did not view $7,000 worth of the items she valued. We, however, find Husband's contention disingenuous. This is because Husband repeatedly refused to allow Ms. Davenport into his home so that she could "view" the items at issue.

The parties stipulated that Ms. Davenport was a qualified expert witness. Ms. Davenport based her $21,382 appraisal on the items she viewed as well as a list of items that Husband removed from the marital residence. Husband signed this list and admitted that these were items in his possession, however, Husband refused to allow Ms. Davenport to see or view the items at issue.

Wife presented the testimony of Ms. Davenport and Husband presented his own opinion as to the value of the goods. The trial court felt that Ms. Davenport's valuation was credible and more accurate than Husband's, and the evidence does not preponderate against the trial court's finding. We, therefore, affirm the value of the household goods and furnishings assigned by the trial court.

### 4. 2005 Corvette

Husband contends the 2005 Corvette was his separate property; therefore, the trial court erred in classifying it as marital property and awarding it to Wife. Alternatively, Husband contends that if this court affirms the award of the Corvette to Wife, the value of the Corvette should be increased from $32,000 to $37,000.

Husband asserts that he purchased the 2005 Corvette with proceeds he received from a personal injury settlement. The only evidence of this was Husband's testimony and this testimony was contradicted by Wife who testified that she was also a plaintiff in the personal injury action and thus the proceeds were in part hers. Wife also testified that the Corvette was a gift to her from Husband. We find that the disputed evidence does not preponderate against the trial court's finding that the 2005 Corvette was marital property. We also find no abuse of discretion in awarding the vehicle to Wife in the division of marital property.

As for the value of the vehicle, the parties have the burden to provide competent valuation evidence. *Kinard*, 986 S.W.2d at 231. The court determined the vehicle was marital property; thus, both spouses owned the vehicle, and, as owners of the personal property, each spouse was entitled to give an opinion as to the value of his or her property. *See Crook v. Mid-South Transfer & Storage, Inc.*, 499 S.W.2d 255, 260 (Tenn. Ct. App. 1973) (citing *McKinnon v. Michaud* 260 S.W.2d 721 (Tenn. Ct. App. 1953)) (stating it is permissible for

an individual to testify as to the value of his or her personal property even though he or she does not qualify as an expert).

Wife opined that the value of the 2005 Corvette was $31,675. Her opinion was based upon knowledge she derived over the years from reading a monthly Corvette magazine, watching the Barrett-Jackson Auto Show[3] on television, and internet research. Husband opined that the Corvette had a value of $37,000. His opinion was based upon the Kelley Blue Book.

"The weight, faith and credit to be given to any witness's testimony lies in the first instance with the trier of fact. The credibility accorded will be given great weight by the appellate court." *Koch v. Koch*, 874 S.W.2d 571, 577 (Tenn. Ct. App. 1993) (citing *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47 (Tenn. 1959); *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844 (Tenn. Ct. App. 1982)). In this case, the trial court obviously placed greater weight, faith, and credit to Wife's testimony.

When valuation evidence is conflicting, as is the case here, the court may place a value on the property that is within the range of the values presented. *Kinard*, 986 S.W.2d at 231. The trial court determined that the value was $32,000, a value that is within the range of the values presented. The evidence does not preponderate against this determination. Thus, we affirm the value assigned for the 2005 Corvette.

### 5. 1964 Corvette

Husband contends that the trial court erred in assigning a value of $35,000 to the 1964 Corvette. Husband testified that the value of the Corvette is $26,000 because the vehicle has more than 200,000 miles on it. Wife testified that the value was $45,000, an opinion she based on knowledge derived from the Barrett-Jackson sales reports and the recent sale of a 1964 Corvette for $52,000 at auction. Husband complains that the trial court "split the proverbial baby" by assigning a value midway between the figures testified to by the parties.

No expert testimony was presented and each of the parties, as owners of the vehicle, opined as to the value of the vehicle. As discussed earlier, the weight and credit to be given to their testimony lies with the trier of fact and the credibility accorded to that testimony will be given great weight by this court. *Koch*, 874 S.W.2d at 577. There was conflicting evidence concerning the value of the 1964 Corvette and the trial court assigned a value that is within the range of values presented. *Kinard*, 986 S.W.2d at 231. Accordingly, we will not disturb the trial court's determination of the value of the 1964 Corvette.

---

[3]Wife referred to the auction as both "Barrett Jackson" and "Barrett Johnson" during her testimony.

### 6. 1990 Harley Davidson FXR

Husband argues that the trial court erred in valuing the 1990 Harley Davidson FXR at $10,000. Husband testified that the value was $6,500, while Wife testified that the motorcycle was worth $15,000; thus, there was conflicting evidence concerning the value of the motorcycle. The trial court assigned a value that is within the range of values presented and the evidence does not preponderate against the trial court's finding. *Kinard*, 986 S.W.2d at 231. Accordingly, we affirm the trial court's determination of the value of the motorcycle.

### 7. Two Haulmark Trailers

The trial court found that Husband was the sole owner of two Haulmark trailers. Husband contends he only owned a one-half interest in both trailers; therefore, the value of the trailers attributed to him should be divided in half. We agree.

It is undisputed that Husband only owns a one-half interest in the trailers. It is also undisputed that the value of the 1995 trailer is $2,000 and the value of the 2005 trailer is $2,500.

Therefore, the trial court erred in finding that Husband was the sole owner of the two trailers and that the total value of the trailers should be assigned to him. Accordingly, the judgment of the trial court is modified to reflect that Husband only owns a one-half interest in each trailer and that Husband should only be credited with an equity interest of $1,000 in the 1995 Haulmark trailer and $1,250 in the 2005 Haulmark trailer.

### 8. Tennessee Titans Personal Seating Licenses

Husband contends the trial court erred in valuing two Tennessee Titans football personal seating licenses (PSLs). The trial court valued the two licenses at $3,500 each, for a total value of $7,000.

Husband testified that the value of each license is only $1,500, which both parties agreed was the amount they paid to acquire the PSLs. Wife testified that she believed the total value of the PSLs was $7,000, but she admitted that her opinion had no economic basis, only a belief the PSLs would sell for that much. Both parties are entitled to give an opinion as to the value of their personal property, however, we find that Wife's value has no foundation but that Husband's valuation does. We, therefore, find that the evidence preponderates against the trial court's valuation of the two PSLs. Accordingly, we modify

the judgment of the trial court and set the value of each PSL at $1,500, which was the purchase price, for a total value of $3,000.

## 9. Wife's Money Market Account

Husband contends the trial court erred in not allocating an additional $21,061.99 as part of Wife's share of the division of the marital estate. The funds pertain to a money market account Wife previously maintained at Region's Bank.

Wife contends the so-called "mysterious $21,061.99" was money that remained from her settlement with DOW, which was awarded to her as her separate property. Wife further asserts that, due to her identity being stolen, she had to close some of her accounts and open new ones, which resulted in confusion concerning these separate funds.

From the review of the record, it is unclear if the "mysterious $21,061.99" about which Husband complains existed at the time of the final divorce hearing. Husband had the burden to prove that the money still existed or that it was marital property and Wife dissipated the money.

The evidence in the record regarding the "mysterious $21,061.99" is confusing at best and we find that the evidence does not preponderate against the trial court's decision not to include the "mysterious $21,061.99" in the marital estate.

## 10. Husband's SEP Account

Husband's last argument concerning the marital property is that the trial court erred by awarding Wife 78 percent of Husband's SEP account. He contends Wife should only receive 39 percent of the SEP account. By doing so, Husband contends, the division of the marital estate would be substantially equal, and, thus, equitable.

An equitable division of the marital property does not require that the property be divided equally. *Robertson*, 76 S.W.3d at 341. "Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c)." *Kinard*, 986 S.W.2d at 230. "Trial courts have wide latitude in fashioning an equitable division of marital property." *Id*. Therefore, this court accords great weight to the trial court's division of marital property. *Wilson*, 929 S.W.2d at 372. Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown*, 913 S.W.2d at 168. The statute sets forth the following factors for consideration when dividing the marital estate. Those factors include, but are not limited to, the duration of the marriage; the age,

physical and mental health, vocational skills, employability, earning capacity of the parties; the estate of the parties; the financial liabilities and needs of the parties; the relative ability of each party for future acquisitions of capital assets and income; the economic circumstances of each party when the division of property is to become effective; and other factors necessary to consider the equities between the parties. *See* Tenn. Code Ann. § 36-4-121(c)(1)-(11).

Husband contends that an equitable division of the marital estate would have been to divide the marital estate equally, with 50 percent to each party. We do not agree. The parties were married for 37 years. Husband has a far superior earning capacity as a veterinarian, while Wife has only a high school education, limited work experience, and significant health problems that limit her ability to work. The evidence showed that Wife worked and helped support the couple while Husband was in veterinary school and she worked in the veterinary clinic until the birth of the parties' only child.

Considering the relevant factors as the trial court obviously did, we find that the trial court's division of the marital estate is consistent with the statutory factors and is supported by the evidence. *Robertson*, 76 S.W.3d at 341. Accordingly, we will not disturb the trial court's award regarding Husband's SEP account.

## ALIMONY *IN FUTURO*

The trial court awarded Wife alimony *in futuro* of $6,400 per month until July 2013, when she turns sixty years old, at which time the amount would decrease to $4,400 and continue thereafter until Wife's remarriage or either party's death. Husband's contends the award of alimony was excessive because Wife does not need the amount awarded and Husband does not have the ability to pay that amount.

The trial court has broad discretion in awarding spousal support. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004)). Further, the trial court has broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of support. *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Accordingly, we are generally disinclined to second-guess a trial judge's decision regarding spousal support unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Broadbent*, 211 S.W.3d at 220 (citing *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting *Kinard*, 986 S.W.2d at 234)). It is the role of this court in reviewing an award of spousal support to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Id.* (citing *Bogan*, 60 S.W.3d at 733).

Therefore, we review an award of alimony based upon the abuse of discretion standard. *Id*. (citing *Bratton*, 136 S.W.3d at 605).

The trial court found that Husband had the ability to pay $6,400 per month and that Wife was in need of that amount of alimony. In making this award, the trial court noted the length of the marriage, the fact that Wife supported Husband both financially and otherwise during his education to become a veterinarian, Husband's greater earning capacity, and the physical condition of Wife, which limited her ability to work. The court further noted the decrease in the alimony award in 2013 would correspond to Wife's 60th birthday, on which date she would be able to access the funds in the IRA and SEP accounts without a tax penalty.

The evidence in the record fully supports the finding that Wife has a need for alimony as she has only a high school education, limited work experience, and significant health problems that made it difficult for her to work outside the home. As for the amount needed, Wife submitted her monthly expenses as $8,657.00, of which $1,457.00 per month was for the cost of her health insurance. Husband challenged the amount of her expenses, stating that Wife's expenses are as little at $1,084.30. We, however, find that Husband's calculations are so extreme they lack credibility because Husband's itemization of Wife's expenses fail to provide for food, other basic living expenses, and health insurance. Conversely, we note with great interest that Husband included in the calculation of his monthly living expenses allowances for food, restaurants, and clothing. Not surprisingly, we are unable to fathom why food and clothing are necessities for Husband but Wife has no need for such items.

As for Husband's contention that he does not have the ability to pay, we find this contention in conflict with the preponderance of the evidence. Husband has lived a lavish lifestyle, as the assortment of expensive motor vehicles, including two Corvettes, and other nonessential vehicles indicate. Husband's claimed inability to pay the alimony awarded by the trial court is also undermined by his own admissions that he has a history of under reporting his income. He testified that he often took cash payments for his veterinary services and did not report the cash receipts as income on the Clinic's books or his income tax returns. Moreover, Husband's "unrecognized" cash income was not insignificant, it ranged from $1,100 to $2,220 per month.[4] Husband also admitted keeping as much as $22,000 in cash in a safe deposit box and keeping additional cash at home in his armoire; however, by the time of trial he said he had no cash stowed away.

---

[4]Husband also admitted that he kept a receipt book as a record of these cash payments, however, Husband claims to have thrown the receipt book away prior to the trial.

We also find it problematic that the monthly expenses claimed by Husband exceed the income he reported. He claims his monthly expenses are $7,677, yet he estimated his net income for 2008 to be $7,455 per month, which is less than his reported net income. This amount, of course, is based on his "reported" income, which does not include up to $2,200 of unreported cash income per month. At the time of the trial, Husband had not submitted his 2008 federal income tax, but he claimed his gross income was only $10,427 per month. If the unreported cash receipts of $2,200 per month are included in his income, as they should be, Husband's monthly income would be approximately $12,600. Accordingly, even if Husband's net income in 2008 diminished due to the current economy, it would certainly exceed the $7,455 per month he reports.

Husband also contends he would be left with only $1,055.54 per month for his living expenses if the alimony award is affirmed; however, during the pendency of the divorce, Husband paid temporary support to Wife of $7,000 per month, which is more than that awarded by the trial court.

Having reviewed the record closely, it is readily apparent that the trial court doubted Husband's credibility and we find no reason to place more faith or credit in Husband's testimony regarding his expenses and income than the trial court.

Based upon the evidence and the factors set forth at Tenn. Code Ann. § 36-5-121(i)(1)-(12), we find that the trial court did not abuse its discretion in the award of alimony *in futuro* to Wife. Thus, we affirm the award of alimony *in futuro* of $6,400 per month until July 2013, when Wife turns sixty years old, at which time the amount decreases to $4,400 per month and continues thereafter until Wife's remarriage or either party's death.

## DISCRETIONARY COSTS

The trial court awarded Wife discretionary costs in the amount of $10,827.75, plus court reporter fees for the trial and the deposition of Wife's doctor, Dr. Bazuldua. Husband contends that some of the costs awarded do not fall within the purview of Tenn. R. Civ. P. 54.04(2). We agree.

Tennessee Rule of Civil Procedure 54.04(2) permits the prevailing party in a civil action to recover "discretionary costs." Under Rule 54.04(2), discretionary costs include "reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees for depositions or trials, and guardian ad litem fees."

The purpose of Rule 54.04(2) is not to punish the losing party but rather to help make the prevailing party whole. *Duran v. Hyundai Motor America, Inc.*, 271 S.W.3d 178, 214 (Tenn. Ct. App. 2008) (citing *Owens v. Owens*, 241 S.W.3d 478, 497 (Tenn. Ct. App. 2007); *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 85 (Tenn. Ct. App. 2000)).

The party seeking discretionary costs has the burden of convincing the trial court that it is entitled to these costs. *Id.* (citing *Carpenter v. Klepper*, 205 S.W.3d 474, 490 (Tenn. Ct. App. 2006); *Stalsworth v. Grummons*, 36 S.W.3d 832, 835 (Tenn. Ct. App. 2000)). A party seeking discretionary costs can satisfy this burden by filing a properly supported motion demonstrating: (1) that it is the prevailing party; (2) *that the costs being sought are included in Tenn. R. Civ. P. 54.04(2)*; (3) that the costs are necessary and reasonable; and (4) that it has not engaged in conduct during the litigation that would justify depriving it of the costs it is requesting. *Id.* (citing *Trundle v. Park*, 210 S.W.3d 575, 582 (Tenn. Ct. App. 2006); *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 65-66 (Tenn. Ct. App. 2004); *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35-36 (Tenn. Ct. App. 2002)) (emphasis added).

As our Supreme Court has explained, Tenn. R. Civ. P. 54.04(2) "specifically limits discretionary costs with regard to expert witnesses to their fees for testifying." *Miles v. Voss Health Care Center*, 896 S.W.2d 773, 776 (Tenn. 1995); *see also Mass. Mut. Life Ins.*, 104 S.W.3d at 38. The record before us clearly indicates that some of the costs awarded to Wife were the fees of expert witnesses who either testified in deposition or at trial, which are properly recoverable under Rule 54.04(2). However, a prevailing party cannot recover the fees for the time an expert prepared for a deposition or trial. *Mass. Mut. Life Ins.*, 104 S.W.3d at 38; *Trundle*, 210 S.W.3d at 583.

The record before us reveals that some of the expert fees awarded to Wife were for services other than the expert's testimony in deposition or trial, and such fees are not recoverable under Rule 54.04(2). The trial court awarded Wife $930.00 for the services of Connie Davenport; however, according to Wife's detailed list of discretionary costs, only $360.00 of this amount was for Ms. Davenport's court appearance. The other fees charged by Ms. Davenport were for outstanding work and appraising Wife's home furnishings; these expenses do not fall under Tenn. R. Civ. P. 54.04(2). Therefore, the award for the costs of Ms. Davenport should be reduced to $360.00.

Additionally, the trial court awarded Wife $8,797.75 for Mr. Garrett's fee. We have determined that Wife did not sufficiently itemize the type of services and the fees for each particular service for the court to make a proper Rule 54.04(2) allocation. We also note an invoice submitted by Mr. Garrett reveals that he charged $642.25 for preparation and testimony at the trial. The trial court awarded the entire fee as a discretionary cost; however,

the part of the fee that was for "preparation" may not be awarded as a discretionary cost under Rule 54.04(2). Therefore, we remand the issue of discretionary costs to the trial court and, on remand, the trial court shall ascertain which of Mr. Garrett's fees are recoverable under Rule 54.04(2) and which are not, and modify the award of discretionary costs accordingly.

As for the other costs awarded as discretionary costs, they were for the following: $400.00 for the deposition testimony of Dr. Bazaldua, an expert witness, and $700.00 for the trial testimony of expert witness Ethan Massa. These discretionary costs are recoverable under Rule 54.04(2) and we affirm the award of these costs.

Therefore, on remand, the trial court shall reduce the award for the fee of Ms. Davenport to $360.00, and the trial court shall review the nature of the services rendered by Mr. Garrett to determine what portion of Mr. Garrett's fees are recoverable under Tenn. R. Civ. P. 54.04(2) and modify the award of discretionary costs as required.

### ATTORNEYS' FEES

Lastly, Husband contends that the trial court erred in awarding Wife attorney's fees, and requests his attorneys' fees for the costs of this appeal. Wife also requests her attorney's fees for this appeal.

An award of attorneys' fees in a divorce action constitutes alimony *in solido*. *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001). An award of attorneys' fees is to be based upon a consideration of the factors set forth at Tenn. Code Ann. § 36-5-121(i), and is appropriate when the spouse seeking them does not have adequate funds to pay his or her legal expenses. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). "It is considered most appropriate where the final decree of divorce does not provide the obligee spouse with a source of funds, such as from property division or alimony in solido, with which to pay his or her attorney." *Id.* (citing *Houghland v. Houghland*, 844 S.W.2d 619 (Tenn. Ct. App. 1992)). The award of attorney fees is within the sound discretion of the trial court, and will not be reversed on appeal if that discretion is not abused. *Id.* (citing *Garfinkel*, 945 S.W.2d at 744).

The evidence at trial demonstrated that Wife was the disadvantaged spouse and that attorneys' fees were incurred due to Husband's lack of cooperation during discovery. The record also reveals, as the trial court found, that Wife contributed to the delay in the resolution of this action, for which Husband was awarded an offset of $10,135 for attorney's fees due to a successful contempt motion against Wife. Having reviewed the record, we find

the trial court did not abuse its discretion by awarding Wife attorneys' fees in the amount of $30,037. Therefore, we affirm the trial court's award of attorneys' fees to Wife.

As for both parties' requests to recover the attorneys' fees they incurred on appeal, this opinion reveals that each party was successful on some issues in this appeal, and, thus we deny both requests to recover attorneys' fee incurred on appeal.

## IN CONCLUSION

In conclusion, we affirm the values assigned to the Madison Veterinary Clinic, the household goods and furnishings, the 2005 Corvette, the 1964 Corvette, and the 1990 Harley Davidson FXR. We also affirm the allocation of Husband's SEP account with 78 percent awarded to Wife and 22 percent to Husband. We find the trial court erred by assigning an additional value to the Madison Veterinarian Clinic Regions bank account, as it was included in the value of the Clinic. We also find the value of the Tennessee Titans personal seating licenses, which were valued at $7,000, should be reduced to an aggregate value of $3,000. Accordingly, the total amount of marital property awarded to Husband is reduced by $33,853.00. Although we have modified the valuation of certain marital assets, our adjustments are inconsequential and do not render the division of marital property inequitable. Accordingly, except as expressly modified above, we affirm the division of marital property as determined by the trial court.

The judgment of the trial court is affirmed in part, modified and reversed in part, and this matter is remanded to the trial court to reconsider the award of discretionary costs, as stated herein, and to enter judgment accordingly. Costs of this appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE

-16-