IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2020 Session

## ARACELI CORDOVA EX REL. ALFREDO C. ET AL. v. NASHVILLE READY MIX, INC. ET AL.

**Appeal from the Circuit Court for Cheatham County
No. 6214  Larry J. Wallace, Judge**

———————————————————

**No. M2018-02002-COA-R3-CV**

———————————————————

This wrongful-death action arises out of the death of a Lemay Concrete employee who was struck and killed by a third party's cement-mixer truck while acting in the course and scope of his employment. The issues in this appeal are post-settlement disputes concerning an attorney's fee lien filed by the plaintiffs' first attorney, a subrogation lien filed by the employer's workers' compensation carrier, and the assessment of post-settlement discretionary costs against the carrier. The employee's family instituted this action after agreeing to pay their first attorney 33% of the gross recovery or "a reasonable attorney's fee" if they discharged him before recovering. While the action was pending, the insurance carrier paid workers' compensation benefits to the family and, after declining a settlement offer of $400,000, the plaintiffs discharged their attorney. The plaintiffs then retained substitute counsel. Months later, the wrongful-death claim was settled for $1,350,000. The plaintiffs then sought to void their first attorney's fee agreement and requested the trial court deduct a portion of their substitute counsel's fees from the carrier's subrogation lien. The trial court referred all issues to a special master. The special master found the fee agreement was valid and recommended a fee of $133,333—or 33% of $400,000, the amount of the last "firm offer" secured during the first attorney's representation. The special master's report contained no findings and identified no factors relied upon in determining that $133,333 was a "reasonable fee," other than finding the amount would be one-third of the last "firm offer" obtained by the first attorney. The special master also found the carrier's own counsel protected its subrogation lien and, thus, recommended that the carrier not be liable for any portion of the plaintiffs' attorneys' fees. The trial court adopted verbatim the special master's findings and recommendations. Additionally, the court assessed post-settlement discretionary costs against the carrier in lieu of a deduction for plaintiffs' attorneys' fees. This appeal followed. We have determined that the fee awarded to the plaintiffs' first attorney was not based on the relevant legal principles or applicable facts because the trial court's ruling was based entirely on the special master's recommendation—which addressed only one of the guidelines in Tennessee Rule of Professional Conduct 1.5(a)

for determining what a reasonable fee is. Therefore, we vacate the fee awarded to the plaintiffs' first attorney and remand this issue to the trial court to award "a reasonable fee" that is based on the relevant facts and factors. We also reverse the trial court's ruling that the workers' compensation carrier was not liable for any portion of the plaintiffs' attorneys' fees and remand this issue for apportionment of the fees incurred by the plaintiffs' attorneys. Accordingly, we also reverse the assessment of discretionary costs against the workers' compensation carrier and remand this issue for reconsideration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part; Vacated in part; Reversed in part and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

David Matthew Rich, Mark W. Honeycutt, II, and David D. Hall, Nashville, Tennessee, for the appellant, Araceli Cordova, individually and on behalf of the decedent's minor surviving children, Alfredo Cordova and Yaretsi Cordova.

Stephen W. Elliott and Fetlework S. Balite-Panelo, Nashville, Tennessee, for the appellee, Travelers Indemnity Company.

Mark Robert Olson, Clarksville, Tennessee, for the appellee, the Estate of Gary J. Hodges.

## OPINION

### BACKGROUND

In March 2013, Sergio Lopez died from injuries he sustained in the course and scope of his employment with Lemay Concrete. Shortly thereafter, Lemay's workers' compensation insurer, Travelers Indemnity Company ("Travelers"), began paying benefits to Mr. Lopez's wife, Araceli Cordova, and his two minor children, Alfredo and Yaretsi Cordova.

Two months later, in May 2013, Ms. Cordova, individually and on behalf of the two minor surviving children, (collectively, "Plaintiffs") filed a wrongful-death action against two third parties, Nashville Ready Mix of West Nashville, LLC ("Ready Mix"), and Ready Mix employee Robert Ashabrunner. Plaintiffs alleged that Mr. Ashabrunner

negligently caused Mr. Lopez's death while operating a Ready Mix truck and that Ready Mix was vicariously liable for Mr. Ashabrunner's actions.

The wrongful-death claim was settled for $1,350,000 in September 2016.[1] The only issues on appeal relate to the amount and allocation of Plaintiffs' attorneys' fees, Travelers' subrogation interest, and the assessment of post-settlement discretionary costs against Travelers.

## A. Attorneys' Fee Lien

Following Mr. Lopez's death, Plaintiffs retained attorney Gary J. Hodges to administer the workers' compensation benefits and file this wrongful-death action on behalf of Plaintiffs. Mr. Hodges's fee agreement entitled him to 33% of the "gross recovery obtained through arbitration hearing, settlement conference or trial." In the alternative, if Plaintiffs discharged Mr. Hodges and later obtained a recovery, the agreement entitled Mr. Hodges to "a reasonable attorney's fee" and reimbursement "for all costs advanced." The fee agreement did not distinguish between discharge for good cause and discharge without cause.

Shortly after being retained by Plaintiffs, Mr. Hodges entered a separate fee-sharing arrangement with another solo practitioner, Robert J. Martin. Although the services Mr. Martin subsequently rendered inured to the benefit of Plaintiffs, he never had a fee agreement with Plaintiffs; only with Mr. Hodges.

In May of 2013, Mr. Hodges and Mr. Martin commenced this wrongful-death action on behalf of Plaintiffs. Nearly a year later, in April 2014, the Ready Mix defendants submitted a $400,000 settlement offer, and Mr. Martin countered with an offer of $925,000. In a subsequent telephone call, the defendants' counsel told Mr. Martin that the defendants' insurance carrier "would accept $700,000" if Plaintiffs were to submit an offer in that amount. Mr. Hodges and Mr. Martin relayed the information to Plaintiffs, but they did not respond to the proposal. Instead, on June 20, 2014, Plaintiffs submitted a discharge letter to Mr. Hodges, stating that she no longer needed his services.

---

[1] During the pendency of the action and prior to the settlement, the trial court appointed attorney Dora Leigh Salinas as guardian ad litem for the decedent's minor children, Alfredo Cordova and Yaretsi Cordova, each of whom receive one-third of the net settlement proceeds.

Three days later, Mr. Hodges and Mr. Martin filed a notice of attorneys' lien in the wrongful-death action, claiming a right to one-third of Plaintiffs' total recovery or one-third of $700,000, the defendants' latest offer.

After discharging Mr. Hodges, Ms. Cordova retained attorneys David Rich and David Hall of Honeycutt, Doyle, and Rich, PLLC (collectively, "HDR"). The fee agreement with HDR entitled it to 33% of her eventual recovery.

Within a week of being retained, HDR received a $600,000 offer of judgment from the Ready Mix defendants. Ms. Cordova did not accept the offer, and HDR promptly began discovery. In February of 2015, Plaintiffs amended their complaint to add additional claims and defendants.[2]

## B. Traveler's Subrogation Interest

Meanwhile, Travelers continued to pay bi-weekly death benefits to Plaintiffs. According to the April 12, 2013 affidavit of Travelers employee Valerie Coles, Travelers paid a statutory funeral benefit of $7,500 and was liable for a maximum of $205,040 in death benefits, which were being paid at a rate of $512.60 per week.[3]

In September 2014, Travelers attorney Steven Elliot notified HDR that Travelers would be filing an intervening complaint. Mr. Elliot explained that it was Travelers' practice to intervene to "formally" notify the parties about Travelers' subrogation interest and ensure Travelers' received copies of future pleadings.

However, Plaintiffs' attorney David Rich objected, asserting that "it would benefit Ms. Cordova's tort claim to not have the employer/workers' compensation provider formally enter the lawsuit." Mr. Rich argued that Travelers' lien interest was already protected and offered to keep Mr. Elliot updated on the proceedings.

---

[2] The additional defendants were Ready Mix employees Carlton Mosely and Jeffrey Bryant.

[3] Tennessee Code Annotated § 50-6-209(b)(1) provides, in relevant part:

In all cases of death of an employee covered by this chapter, sixty-six and two-thirds percent (66 $^2/_3$ %) of the average weekly wages shall be paid in cases where the deceased employee leaves dependents, subject to the maximum weekly benefit.

"Maximum total benefit" is defined as 400 weeks times the average weekly wages. *Id*. § 102(15)(C).

Travelers withheld its intervening complaint until December 2015, when Mr. Elliot notified Mr. Rich again that Travelers would be intervening. Still, Mr. Rich objected:

> Is there any purpose in this? If your client moves to intervene[,] then I will move that your client split all discretionary costs incurred at this time and advance half of all costs incurred in the future in this case.

> This is not an easy case[,] and your client will hurt the plaintiffs['] claims by confusing and distracting the jury at trial. There is no purpose in intervention as the [s]ubrogation interest is being adequately protected.

Again, Travelers complied and withheld its intervening complaint.

Five months later, in May 2016, Mr. Elliot emailed Mr. Rich and requested an update on the case. Mr. Rich informed Mr. Elliot that the matter was set for mediation in September 2016. Mr. Rich agreed to have Mr. Elliot present for the mediation, but Mr. Elliot agreed to remain "off stage."

At the mediation, Plaintiffs accepted the Ready Mix defendants' settlement offer of $1,350,000. Mr. Elliot and Mr. Rich, however, could not agree on the amount of Travelers' subrogation interest or the allocation of HDR's fee between Plaintiffs and Travelers. Nevertheless, Plaintiffs completed the settlement with the Ready Mix defendants. The settlement proceeds were held by the court pending resolution of the various lien claims to the settlement proceeds and assessment of costs.[4]

## C. Post-Settlement Litigation

In November 2016, Plaintiffs filed motions to adjudicate the attorneys' fee and subrogation liens. As for the attorneys' lien, Plaintiffs objected to paying any fee to Mr. Hodges and Mr. Martin. Plaintiffs alleged that Mr. Hodges and Mr. Martin entered a fee-sharing arrangement without Plaintiffs' consent, failed to investigate or prosecute Plaintiffs' claims, and pursued settlement negotiations without Plaintiffs' permission. Regarding Travelers' subrogation lien, Plaintiffs asserted Tenn. Code. Ann. § 50-6-

---

[4] The record indicates that the Ready Mix defendants paid the court costs that had been incurred to the date of the settlement.

112(b) required Travelers to contribute toward Plaintiffs attorneys' fees for prosecuting the tort action.[5]

Presuming they would need to testify to defend their lien, Mr. Hodges and Mr. Martin retained attorney Mark Olson to represent them. They also sought to depose Ms. Cordova to assess whether she terminated Mr. Hodges "for cause" or "without cause." Conversely, Plaintiffs sought to compel Mr. Hodges and Mr. Martin to account for their time and expenses.

Additionally, Plaintiffs moved to disqualify Mr. Olson from representing Mr. Hodges and Mr. Martin. Plaintiffs contended Mr. Olson had a conflict of interest because he had represented defendant Carlton Mosely during the underlying litigation and argued that Mr. Hodges and Mr. Martin might reveal privileged attorney-client communications. In its Order of March 6, 2017, however, the trial court declined to disqualify Mr. Olson, reasoning that Plaintiffs had no standing to challenge Mr. Olson's involvement because he never acted as counsel for Plaintiffs.[6] The court also noted that Tennessee Rule of Professional Conduct 1.6 anticipated that attorneys might disclose information related to representing a client when seeking to enforce a fee agreement.[7]

---

[5] Tenn. Code. Ann. § 50-6-112(b) provides:

In the event of a recovery from the other person by the worker, or those to whom the worker's right of action survives, by judgment, settlement or otherwise, the attorney representing the injured worker, or those to whom the injured worker's right of action survives, and effecting the recovery, shall be entitled to a reasonable fee for the attorney's services, and the attorney shall have a first lien for the fees against the recovery; provided, that if the employer has engaged other counsel to represent the employer in effecting recovery against the other person, then a court of competent jurisdiction shall, upon application, apportion the reasonable fee between the attorney for the worker and the attorney for the employer, in proportion to the services rendered.

[6] Mr. Mosely filed an affidavit stating that he did not oppose Mr. Olson's representation of Mr. Hodges and Mr. Martin.

[7] Tennessee Rule of Professional Conduct 1.6 provides, "A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client . . . or to respond to allegations in any proceeding concerning the lawyer's representation of the client . . . ." Tenn. R. Sup. Ct. 8, RPC 1.6(b), (b)(5).

Initially, Travelers conceded that § 50-6-112(b) entitled HDR to a "reasonable attorney's fee" from its subrogation recovery. But Travelers asserted that HDR's work on the case warranted a fee of only 20% of the previously paid benefits rather than 33% of past and future benefits. Later, Travelers amended its position and asserted that HDR was entitled to none of Travelers' subrogation recovery because HDR had "done nothing to assist Travelers in protecting its lien," and "Travelers' own counsel continued to stay involved in the case while honoring [Plaintiffs] request to not intervene."

After denying Plaintiffs' motion to disqualify Mr. Olson, the trial court ordered the parties to attend a judicial settlement conference. The parties attended the conference in April 2017, but they were unable to reach any agreement. In his report, the presiding judge noted that "no meaningful settlement negotiations really occurred" because "the former attorneys for Plaintiff and the insurance carrier for the workers' compensation claim arrived at the hearing with a set position from which they never varied." Consequently, the matters were reset on the trial court docket. The parties were given until October 6, 2017, to file their briefs.

Mr. Hodges passed away unexpectedly on September 22, 2017. On October 6, 2017, Mr. Olson filed a motion to extend the filing period rather than filing a brief. In the succinct, four-paragraph motion, Mr. Olson announced that Mr. Hodges passed away and averred that he had "not had an opportunity to have an in-depth discussion regarding the matters" with Mr. Hodges's heir.

The trial court granted the motion and extended the briefing deadline to December 1, 2017. In the meantime, the court disbursed $100,000 of the settlement proceeds to Plaintiffs.

On December 1, 2017, Mr. Olson filed a brief on the merits of the attorneys' lien on behalf of Mr. Martin and "Gary J. Hodges (Deceased)." The brief, however, made no mention of who, if anyone, would be substituted for Mr. Hodges. Thus, on February 12, 2018, Plaintiffs moved to dismiss Mr. Hodges's lien under Tenn. R. Civ. P. 25.01, arguing that Mr. Hodges's death was "suggested upon the record" in October 2017, but no motion for substitution had been filed within 90 days thereafter.[8]

---

[8] Tennessee Rule of Civil Procedure 25.01(1) provides:

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of

(continued…)

In March 2018, the trial court referred "all unresolved matters" to a special master.

In April 2018, Mr. Olson filed a response to Plaintiffs' Motion to Dismiss, along with a "Suggestion of Death" and a motion to substitute the Estate of Gary J. Hodges (hereinafter the "Hodges Estate"). Mr. Olson asserted the motion to substitute complied with Rule 25.01 because no "Suggestion of Death" had been filed until that time. The trial court heard and granted the Motion to Substitute at a hearing in May 2018.

D. Special Master's Report

The special master conducted a teleconference hearing in June 2018, and he filed his report and recommendations the next month.

Regarding Travelers' subrogation lien, the special master found that Travelers was not responsible for any portion of Plaintiffs' attorneys' fee because Travelers' attorney, Mr. Elliot, was "actively involved in the representation of [Travelers]," and HDR had insisted that "Travelers not take an aggressive role."

Regarding the attorneys' lien, the special master found that Mr. Hodges's fee agreement entitled him to a "reasonable attorney fee" in the amount of one-third of the $400,000 settlement offer. The Report and Recommendation read in pertinent part:

> The record, filings and statements made by counsel of all interested parties evidence a contract existed between client Araceli Cordova and Attorney Gary Hodges. The contract set out the terms which included a one-third contingency fee for services of Attorney Gary Hodges. The contract further included terms which permit[ted Ms. Cordova] to discharge [Mr. Hodges] but required [Ms. Cordova] to pay a reasonable attorney fee for all services provided.
>
> . . . . [T]he Special master finds that Attorney Gary Hodges did secure a firm offer of $400,000.00. An offer of judgement was also filed by defense

hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of process. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

counsel in the amount of $600,000.00[,] but no action was taken on that filing by Attorney Hodges. There is nothing seen by the special master to indicate the $400,000.00 firm offer was ever withdrawn.

The client (Araceli Cordova) did discharge Attorney Gary Hodges as permitted by the attorney-client contract. The client was still obligated to pay a reasonable attorney fee. The fee owed by the client would be based on the only firm offer of $400,000.00. As there is no proof showing the $400,000.00 was withdrawn, the client in her individual and representative capacity would owe the estate of Gary Hodges one-third of $400,000.00.

As for Mr. Martin, the special master found that he was simply Mr. Hodges's agent and had no contract with Ms. Cordova. Thus, the special master concluded that Mr. Martin had no right to recover a fee directly from Plaintiffs.[9]

E. Final Order

In August 2018, Plaintiffs filed a motion to strike the order substituting the Hodges Estate, a motion objecting to certain findings by the special master, and a motion for final judgment. According to Plaintiffs, the Hodges Estate did not serve a copy of the motion to substitute on Plaintiffs and did not provide Plaintiffs with notice that the motion was set for a hearing by interchange in Dickson County. As for the special master's report, Plaintiffs objected to the finding that Mr. Elliot had been active in the litigation.

The Hodges Estate and Mr. Martin also filed an objection to the special master's report, arguing that Mr. Hodges's fee should have been based on the $700,000 offer discussed with the Ready Mix defendants' counsel before Ms. Cordova discharged Mr. Hodges in June 2014. Mr. Martin objected to the special master's failure to consider whether he was entitled to a fee from Plaintiffs under the theory of quantum meruit. Thus, the case was once again placed on the court's docket for a hearing.

In September 2018, the trial court heard argument from the parties. The next month, the trial court entered an order adopting the special master's report verbatim. In

___

[9] The trial court adopted this recommendation and denied Mr. Martin's claim for attorney's fees, and Mr. Martin did not appeal the denial of his claim. Thus, our analysis is limited to Mr. Hodges's claim to recover his attorney's fees. Whether Mr. Martin is entitled to recover a share of the attorney's fees awarded to the Hodges Estate is not before this court.

addition, the court found that substituting the Hodges Estate was appropriate and ordered Travelers to pay "any and all court costs" associated with the post-settlement litigation.

In November 2018, Travelers, Mr. Hodges, and Mr. Martin filed motions to alter or amend the judgment, and Plaintiffs requested the disbursement of all monies not in dispute.[10] The motions were heard in April 2019—two and a half years after Plaintiffs settled their claims with the Ready Mix defendants. Noting that the case had been "one of the most contentious cases," the trial court denied the motions to alter or amend. The court also assessed against Travelers all post-settlement discretionary costs, which totaled approximately $18,000. The court stated this assessment was equitable because Travelers was not being held responsible for any of Plaintiffs' attorneys' fees.

In its written order of May 10, 2019, the court found $725,400.80 of the $1,350,000 settlement proceeds were still in dispute, representing "(a) $450,000 for resolution for attorneys['] fees; and (b) $275,400.80 for Travelers' lien for benefits paid as the workers' compensation insurance carrier." The court then ordered the disbursement of the remaining funds: (1) $496,708.75 to Plaintiffs[11]; (2) $5,658.75 to the guardian *ad litem* for the children; (3) $3,250 for the Special master's fees and costs; and (4) $18,971.70 for court-approved costs and expenses incurred by HDR as of April 22, 2019.

This appeal followed.

### ISSUES

The parties have raised multiple issues on appeal, which we consolidate and restate as follows:

I.   Whether the trial court erred in ruling that Plaintiffs lacked standing to assert a conflict of interest concerning attorney Mark Olson's representation of Robert Martin and Gary Hodges to recover attorneys' fees against Plaintiffs.

---

[10] Plaintiffs also filed their notice of appeal, but it was premature as not all claims and issues had been decided.

[11] The $496,708.75 included the $100,000 already distributed to Plaintiffs pursuant to the court's Order of October 16, 2017.

II. Whether the Hodges Estate was properly substituted under Tennessee Rule of Civil Procedure 25.01 for Gary Hodges in pursuit of his attorney fee claim.

III. Whether Gary Hodges was entitled to recover any attorney fees for his representation of Plaintiffs and, if so, in what amount.

IV. Whether Travelers should be held responsible for any portion of the attorneys' fees incurred by Plaintiffs in prosecuting the wrongful-death claims that benefitted Plaintiffs and Travelers and, if so, in what amount.

V. Whether the trial court erred in assessing all post-settlement discretionary costs against Travelers.

VI. Whether Plaintiffs are entitled to recover prejudgment interest, postjudgment interest, and attorneys' fees accrued in defending against the attorneys' lien claims asserted by the Hodges Estate and Robert Martin.

## STANDARD OF REVIEW

The issue of whether a party is entitled to an award of attorneys' fees under a statute and the amount of fees awarded is reviewed pursuant to an abuse of discretion standard. *Eberbach v. Eberbach*, 535 S.W.3d 467, 479 n.7 (Tenn. 2017). Conversely, the issue of whether a party is entitled to an award of attorneys' fees under a contract is reviewed de novo. *Id*. Likewise, we review the interpretation of statutes and rules of civil procedure "de novo with no presumption of correctness given to the trial court's conclusions." *Hickman v. Cont'l Baking Co.*, 143 S.W.3d 72, 77 (Tenn. 2004); *In re Baby*, 447 S.W.3d 807, 818 (Tenn. 2014).

We review a trial court's findings of fact de novo upon the record with a presumption of correctness unless the preponderance of the evidence is otherwise, Tenn. R. App. P. 13(d); but when we review findings made by a special master and concurred with by a trial court, "we must affirm if there is any material evidence to support the trial court's concurrence." *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995).

## ANALYSIS

### I. MARK OLSON'S REPRESENTATION OF ATTORNEYS MARTIN AND HODGES

Plaintiffs sought to disqualify attorney Mark Olson from representing Robert Martin and Gary Hodges in their efforts to recover attorneys' fees against Plaintiffs. The contentions were, *inter alia*, that Mr. Olson had a conflict of interest because he had represented one of the Ready Mix defendants, Carlton Mosely,[12] in the wrongful-death action and that Mr. Hodges and Mr. Martin might reveal privileged attorney-client communications.

In its Order of March 6, 2017, the trial court declined to disqualify Mr. Olson, reasoning that Plaintiffs had no standing to challenge Mr. Olson's involvement because he never acted as counsel for Plaintiffs. Further, the court noted that Carlton Mosely, Mr. Olson's former client, filed an affidavit consenting to Mr. Olson's representation of Mr. Martin and Mr. Hodges. We agree with the trial court's determination that Plaintiffs did not have standing to challenge Mr. Olson's representation because he never represented Plaintiffs.

As for the contention that Plaintiffs' former attorneys may reveal Plaintiffs' confidences to Mr. Olson, the court relied on Tennessee Rule of Professional Conduct 1.6, which provided Mr. Martin and Mr. Hodges with the right to reveal information relating to the representation of Plaintiffs "to the extent [they] reasonably believe[d] necessary . . . to establish a claim or defense" in a controversy between them and Plaintiffs concerning their prior representation of Plaintiffs. *See* Tenn. R. Sup. Ct. 8, RPC 1.6(b), (b)(5).

Plaintiffs also contend that their former attorneys' engagement of Mr. Olson creates an appearance of impropriety. While the appearance of impropriety may justify disqualification, it should be noted, "except in the rarest of cases, the appearance of impropriety alone is simply too slender a reed on which to rest a disqualification order." *See Moody v. Hutchison*, 247 S.W.3d 187, 201 (Tenn. Ct. App. 2007) (citations omitted). Plaintiffs' concern that their former attorneys may reveal more information than is permitted is mere speculation, which we find to be too slender a reed upon which to disqualify Mr. Olson.

---

[12] Carlton Mosely was the Nashville Ready Mix dispatcher who sent the mixer truck that was involved in the accident that resulted in the death of Mr. Lopez.

II. WHETHER THE ESTATE OF GARY HODGES WAS PROPERLY SUBSTITUTED AS A PARTY

Plaintiffs contend the trial court was required to dismiss Mr. Hodges's claim per Tennessee Rule of Civil Procedure 25.01 for failure to timely substitute the Hodges Estate as a party. Plaintiffs argue that the Hodges Estate was not timely substituted because the Hodges Estate filed its Motion for Substitution more than 90 days after Mr. Hodges's death was "suggested upon the record." The Hodges Estate responds that its motion was timely because no "Suggestion of Death" was filed until April 2018. Further, the Hodges Estate contends the trial court had broad discretion to waive the time limit, and the court did not abuse its discretion by allowing the substitution of parties.

When a party dies during the pendency of an action, Tenn. R. Civ. P. 25.01(1) mandates dismissal of the action "as to the deceased party" unless a motion for substitution is filed "not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death." However, Tenn. R. Civ. P. 6.02 gives trial judges broad discretion to enlarge limitation periods "upon motion made after the expiration of the specified time period . . . , where the failure to act was the result of excusable neglect." *See Douglas v. Estate of Robertson*, 876 S.W.2d 95, 98 (Tenn. 1994) (affirming trial court's extension of time when the party's failure to move for substitution was due to excusable neglect).

The fact of Mr. Hodges's death was first mentioned in the October 2017 Motion to Enlarge:

> Comes now, Robert J. Martin and the Estate of Gary J. Hodges, to move this Court to enlarge the time that they have to file a pleading regarding the attorney's fees at issue in this civil action. In support of this Motion, Counsel would respectfully show the Court as follows:
>
> .   .   .
>
> 2. Between the time that the parties last were in Court, and October 6, which is the deadline date established for filing certain documents with this Court, Gary J. Hodges passed away.
>
> 3. Counsel has talked with the sole heir to the Estate of Gary J. Hodges, however, has not had an opportunity to have an in-depth discussion regarding the matters associated with this action.
>
> 4. It is respectfully submitted that the death of Gary J. Hodges was unexpected. As result [sic], and enlargement of time within which to file the responsive pleading is respectfully sought.

Six months later, in April 2018, the Hodges Estate announced Mr. Hodges death in a filing titled *Suggestion of Death*:

- 13 -

> Comes now Mark R. Olson, counsel for Robert J. Martin and Gary J. Hodges pursuant to TRCP 25.01 and suggests the death of Gary J. Hodges on September 22, 2017.

In a contemporaneous filing, the Hodges Estate moved to substitute itself for the deceased Mr. Hodges. On October 26, 2018, the trial court adopted the special master's report and recommendation holding:

> [T]he Court finds that it is appropriate pursuant to T.R.C.P. 25.01, that the Estate of Gary J. Hodges, Deceased, Dickson County Docket No.: 10-17-143-P should be substituted as a party for Gary J. Hodges.[13]

When interpreting a rule of civil procedure, our courts use the familiar rules of statutory construction. *In re Baby*, 447 S.W.3d at 818. Accordingly, we first look to the text of the rule and give the words of the rule "their natural and ordinary meaning in the context in which they appear and in light of the [rule]'s general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012).

Rule 25.01 requires a party's death to be "suggested upon the record by service of a statement of the fact of the death." It is undisputed that the Motion to Enlarge was served on the parties, and it cannot be disputed that the Motion to Enlarge included a "statement of the fact of the death." The gravamen of the Hodges Estate's argument is that Rule 25.01 requires a formal filing entitled "Suggestion of Death" to trigger the 90-day limitation period. The Hodges Estate, however, provides no authority to support this proposition.

Some federal courts, interpreting the analogous Rule 25 of the Federal Rules of Civil Procedure, have found that a mention of or "[m]ere reference to" the fact of a party's death "is not sufficient to trigger the limitations period for filing a motion for substitution." *See, e.g.*, *Grandbouche v. Lovell*, 913 F.2d 835, 836–37 (10th Cir. 1990). However, the October 2017 Motion to Enlarge did not merely "reference" or "mention" Mr. Hodges's death. Its purpose was to notify the court and parties that Mr. Hodges had died and to request additional time for filing a responsive brief because of his death.

Nevertheless, citing to *Douglas v. Estate of Robertson*, 876 S.W.2d at 98, the Hodges Estate argues that it was within the trial court's discretion to grant its April 2018

---

[13] The briefs filed in this matter suggest that the motion for substitution was heard by interchange in Dickson County on May 29, 2018. The record contains no transcript of the hearing.

- 14 -

Motion for Substitution. In *Douglas*, the Tennessee Supreme Court stated that a trial court has the discretion to grant a motion for substitution after the expiration of the limitation period "**where the failure was the result of excusable neglect**." *Id*.

The record suggests that the motion for substitution was heard on May 29, 2018, but there is no transcript or statement of the evidence from that hearing. Generally, in the absence of a transcript or statement of the evidence, we must presume that the trial court's decision is correct. As explained in *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 48 (Tenn. Ct. App. 2013):

> It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the Trial Court to support its judgment and this Court must therefore affirm the judgment.

*Id.* (quoting *Outdoor Management LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007)). Therefore, we must presume that whatever statements were made or facts presented at the hearing on the motion established that the delay in filing the motion was due to excusable neglect. Furthermore, the burden was on Plaintiffs to show an abuse of discretion on the part of the trial judge. *Douglas*, 876 S.W.2d at 97. Although Plaintiffs sought to set aside the May 2018 ruling on the basis that they were not given notice, the trial court made no finding on that issue, and Plaintiffs have not raised it on appeal.

For the foregoing reasons, we find no abuse of discretion with permitting the Hodges Estate to be substituted for Mr. Hodges.

### III. Gary Hodges's Claim for Attorney's Fees

Plaintiffs first contend Mr. Hodges forfeited his entitlement to a fee by engaging in unethical conduct. Alternatively, they contend that a "reasonable fee" for Mr. Hodges was nothing because he was discharged for cause early in the litigation.

For its part, the Hodges Estate contends the trial court erred by calculating Mr. Hodges's fee using the $400,000 settlement offer rather than the $600,000 offer.[14]

### A. Claim Forfeiture

---

[14] Mr. Hodges initially claimed a right to one-third of the $700,000 settlement amount discussed with the Ready Mix defendants' counsel prior to his discharge. On appeal, the Hodges Estate seeks a fee based on the $600,000 offer of judgment transmitted to HDR after Mr. Hodges's discharge.

The Tennessee Rules of Professional Conduct do not provide a basis for a cause of action against an attorney. *See* Tenn. Sup. Ct. R. 8, Preamble & Scope ¶ 21. "Nevertheless, in some circumstances, a lawyer's violation of a Rule may be relevant in determining whether there was also a breach of the applicable standard of conduct." *Id.* Thus, the Tennessee Supreme Court has held that an attorney may forfeit his or her right to collect a fee if the attorney commits "an ethical transgression of a most flagrant sort," which "goes directly to the heart of the fiduciary relationship that exists between attorney and client." *White v. McBride*, 937 S.W.2d 796, 803 (Tenn. 1996).

Plaintiffs assert that Mr. Hodges forfeited his right to collect a fee by violating Tennessee Rule of Professional Conduct 1.5(e). The rule provides, in relevant part: "A division of a fee between lawyers who are not in the same firm may be made only if: . . . (2) the client agrees to the arrangement, and the agreement is confirmed in writing. . . ." Tenn. Sup. Ct. Rule 8, RPC 1.5. Here, it is undisputed that Mr. Hodges did not obtain Plaintiffs' written consent to enter into a fee-sharing agreement with Mr. Martin.

Although neither Mr. Hodges nor Mr. Martin denied that they failed to obtain Plaintiffs' written consent to the fee-sharing arrangement, this transgression is not "of a most flagrant sort," and it does not go "directly to the heart of the fiduciary relationship that exists between attorney and client." *White*, 937 S.W.2d at 803. We reached the same conclusion in *Coleman v. Coleman*, No. W2012-02183-COA-R3-CV, 2013 WL 5308013 (Tenn. Ct. App. Sept. 19, 2013). We reasoned that the violation of Rule 1.5(e) was not "flagrant" because the client was informed about the fee when her relationship with the firm began, and she "did not pay more overall attorney fees because of the referral fee agreement." *Id.* at *19.

There is no evidence to support a finding that Mr. Hodges's failure to obtain Plaintiffs' written consent prejudiced them. Accordingly, Mr. Hodges's violation of the rule does not preclude him from recovering a reasonable fee as set forth in the fee agreement. *See Seibers v. Pepsi-Cola Bottling Co.*, No. M1999-02559-COA-R3-CV, 2000 WL 1862833, at *7 (Tenn. Ct. App. Dec. 21, 2000) (concluding that attorney's ethical violation did not preclude fee when there was "no evidence that the [violation] impaired the value of [the attorney's] work or that it threatened or harmed any of [the client's] interests").

## B. A "Reasonable Fee" for Mr. Hodges

Generally, the amount to which a discharged attorney is entitled depends on whether the attorney was discharged with or without cause. *See Adams v. Mellen*, 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981). Mr. Hodges's written fee agreement with Plaintiffs entitled him to one-third of the "gross recovery obtained through arbitration hearing, settlement conference or trial." In the alternative, if Plaintiffs discharged Mr. Hodges and later obtained a recovery, the agreement entitled Mr. Hodges to "a

reasonable attorney's fee" and reimbursement "for all costs advanced." The fee agreement did not distinguish discharge for good cause and discharge without cause. When an attorney and client enter a fee agreement, "[t]he parties are entitled to have their contract enforced according to its express terms." *Wilson Mgmt. Co. v. Star Distributors Co.*, 745 S.W.2d 870, 873 (Tenn. 1988). It is undisputed that Mr. Hodges was discharged; thus, by contract, he was entitled to "a reasonable attorney's fee."

When the agreement specifies "a reasonable fee rather than a percentage of recovery, it is clear that [the parties] expect a court to adjudicate the issue of a reasonable fee." *Id*. "[T]he reasonableness of the fee must depend upon the particular circumstances of the individual case." *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 177 (Tenn. 2011) (quoting *White*, 937 S.W.2d at 800). "The mere fact that a one-third contingency fee is 'reasonable' in the sense that it is customary in local personal injury suits is insufficient to sustain a corresponding award [of a 'reasonable attorney fee']." *Adams*, 618 S.W.2d at 489. Further and significantly, "where an attorney's fee is based upon a contractual agreement expressly providing for a reasonable fee, the award must be based upon the guidelines by which a reasonable fee is determined." *Wilson Mgmt. Co.*, 745 S.W.2d at 873. These guidelines are enumerated in Tennessee Rule of Professional Conduct 1.5(a). *See Wright ex rel. Wright*, 337 S.W.3d at 185.

As Rule 1.5(a) expressly states, the factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5(a).

The trial court approved and adopted the report and recommendation of the special master, which found that Plaintiffs owed the Hodges Estate one-third of the only settlement offer the Ready Mix defendants made during Mr. Hodges's representation of Plaintiffs, that being $400,000:

> The client (Araceli Cordova) did discharge Attorney Gary Hodges as permitted by the attorney-client contract. The client was still obligated to pay a reasonable attorney fee. The fee owed by the client would be based on the only firm offer of $400,000.00. As there is no proof showing the $400,000.00 was withdrawn, the client in her individual and representative capacity would owe the estate of Gary Hodges one-third of $400,000.00.

Accordingly, the court awarded $133,333.33 to the Hodges Estate.

The Hodges Estate contends that the trial court erred by finding that Mr. Hodges did not secure the $600,000 offer of judgment. However, when reviewing concurrent findings by a special master and trial judge, this court "must affirm if there is any material evidence to support the trial court's concurrence." *Archer*, 907 S.W.2d at 415. The evidence in the record establishes that the defendants made the $600,000 offer of judgment *after* Ms. Cordova discharged Mr. Hodges and hired HDR, who immediately began to prosecute the case and signaled their intent to begin discovery. Thus, there is material evidence to support the trial court's concurrence with the special master's finding that the $600,000 offer did not result from Mr. Hodges's efforts, only the $400,000 offer. Thus, we affirm the finding that the $400,000 offer was the "results obtained" as contemplated by Tenn. Sup. Ct. R. 8, RPC 1.5(a)(4).

The foregoing notwithstanding, the contract expressly provides that Mr. Hodges's fee was to be a "reasonable fee." Thus, consideration of the relevant factors in Tennessee Rule of Professional Conduct 1.5(a) was required. The record before us reveals that only one factor was considered, the "results obtained," which constitutes an error of law. Accordingly, we vacate the attorney fee awarded to the Hodges Estate and remand with instructions for the trial court to award a reasonable fee that is based on the relevant facts and factors. *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a).

## IV. TRAVELERS' SUBROGATION LIEN

As for Travelers' subrogation lien, Plaintiffs contend the trial court miscalculated the amount of Travelers' recovery under the Tennessee Workers' Compensation Law. Travelers agrees with the calculation of its award but contends the trial court erred by ordering it to pay Plaintiffs' discretionary costs.

## A. Amount of Subrogation Lien

First, Plaintiffs contend the trial court misapplied Tenn. Code. Ann. § 50-6-112 by including unpaid, future benefits in its calculation of Travelers' subrogation lien.

When injured in the course and scope of employment by "some person other than the employer," the worker may claim both workers' compensation benefits from the employer and seek damages from the third party. *See* Tenn. Code Ann. § 50-6-112(a). "To prevent the employee from receiving a double recovery," § 112(c) provides the employer with "a subrogation lien against any recovery the employee receives from the third party as well as a credit against any future liability that accrues." *Hickman*, 143 S.W.3d at 76–77.[15] The subrogation lien is equal to the amount of previously paid benefits, and the credit applies "to the extent the employee's net recovery exceeds [that] amount." *Id.* at 77–78.

The special master found that Travelers was entitled to a lien in an amount equal to the benefits it paid, and it concluded that all periodic payments would cease upon distribution of the funds. Specifically, the special master stated:

> As Travelers Insurance is continuing to pay periodic benefit payments, the amount of subrogation to date should be updated or waived by Attorney Elliott on the date of distribution from the amount held by the Circuit Court Clerk. Upon distribution of all funds held by the Circuit Court Clerk, further periodic payments from Travelers Insurance should cease, consistent with their right of full subrogation.

---

[15] Tennessee Code Annotated § 50-6-112(c) provides, in relevant part:

(1) In the event of a recovery against the third person by the worker, . . . and the employer's maximum liability for workers' compensation under this chapter has been fully or partially paid and discharged, the employer shall have a subrogation lien against the recovery . . . .

(2) In the event the net recovery by the worker . . . exceeds the amount paid by the employer, and the employer has not, at the time, paid and discharged the employer's full maximum liability for workers' compensation under this chapter, the employer shall be entitled to a credit on the employer's future liability, as it accrues, to the extent the net recovery collected exceeds the amount paid by the employer.

Subsequently, however, the special master incorrectly estimated that Travelers' subrogation lien totaled $275,400.80. The trial court adopted the special master's findings and recommendations.

According to Tennessee's Workers' Compensation Law, Travelers' liability for weekly benefits was, at most, $205,400.80.[16] In addition, Travelers paid $7,500 in funeral benefits. Therefore, the amount of Travelers' lien would be, at most, $212,900.80. Because Travelers had not fully paid and discharged their maximum liability at the time of the court's judgment, the amount of its lien should have been equal to $212,900.90 less the amount of future, unpaid weekly benefits.[17]

In addition, Travelers was "entitled to a credit against future liability to the extent the [Plaintiffs'] net recovery exceed[ed] the amount that [Travelers] previously paid in workers' compensation benefits." *Hickman*, 143 S.W.3d at 77–78. As of June 2018, Travelers' future liability was $65,973.60 ($205,400.80 maximum liability less $139,427.20 already paid), and it has decreased each week since then. Plaintiffs' "net recovery" is the balance of settlement proceeds less attorneys' fees. *See id.* at 74, 78 (plaintiff's "net recovery" was the balance of settlement proceeds after attorney's fee). Although the amount of Plaintiffs' attorneys' fees is subject to change on remand—thus changing the amount of Plaintiffs' net recovery—their net recovery will exceed Travelers' future liability, which has continued to decrease with each passing month.

Based on the above, we agree with the court's determination that all periodic payments will cease upon the distribution of the settlement funds; however, the *maximum* amount of Travelers' subrogation lien is $212,900.90. Accordingly, we remand this issue to the trial court for a recalculation of the lien based on an updated accounting of benefits paid.

---

[16] As explained, Plaintiffs' weekly benefit payment is $512.60, which Travelers was obligated to pay for a maximum of 400 weeks, contingent on Ms. Cordova's marital status and the children's status as minors. *See* Tenn. Code. Ann. § 50-6-102(15)(A), -209, -210.

[17] As an example, Travelers paid and discharged $139,427.20 in weekly benefits as of June 12, 2018—the date of the last accounting in the record. Therefore, as of that date, Travelers would have been entitled to a subrogation lien for $146,927.20 ($139,427.20 in weekly benefits paid plus $7,500 in funeral benefits paid).

## B. Attorneys' Fees

Plaintiffs also argue that Travelers should pay a pro rata share of HDR's fee because Travelers' counsel did not actively prosecute Plaintiffs' tort claims. Further, Plaintiffs maintain that the fee should be one-third of Travelers' maximum liability—rather than the amount of its lien. As we just discussed, Travelers' maximum liability is $212,900.90, but its lien will be equal to the amount of benefits paid.

Travelers asserts that it should not be responsible for any of HDR's fee because its counsel actively participated by monitoring the proceedings and attending mediation. Moreover, Travelers contends HDR did nothing to protect Travelers' subrogation interest, and any lack of participation was at Plaintiffs' behest and for Plaintiffs' benefit. Travelers also maintains that any fee should apply only to the amount of its lien.

Because both the employee and the employer have an interest in recovering against third-party tortfeasors, employers have the right to intervene in a third-party action. *See* Tenn. Code. Ann. § 50-6-112(c)(1) ("[T]he employer may intervene in any action to protect and enforce its lien."); *see also id.* § 112(d)(2) (providing that employee's failure to bring action operates as assignment of that action to the employer). Regardless of who files the action, the attorneys who prosecute the claim are entitled to a "reasonable fee":

> In the event of a recovery from the other person by the worker, or those to whom the worker's right of action survives, . . . the attorney representing the injured worker, or those to whom the injured worker's right of action survives, and effecting the recovery, shall be entitled to a reasonable fee for the attorney's services, and the attorney shall have a first lien for the fees against the recovery . . . .

*Id.* § 112(b); *see also Summers v. Command Sys., Inc.*, 867 S.W.2d 312, 316 (Tenn. 1993) ("The lawyers who prosecute the tort action are entitled to receive a reasonable fee based on services rendered.").

If both the employee and the employer have engaged counsel for "effecting the recovery," then the trial court may apportion the fees:

> [I]f the employer has engaged other counsel to represent the employer in effecting recovery against the other person, then a court of competent jurisdiction shall, upon application, apportion the reasonable fee between the attorney for the worker and the attorney for the employer, in proportion to the services rendered.

Tenn. Code Ann. § 50-6-112(b).

Thus, § 112(b) directs the deduction of a "reasonable fee" from the employee's recovery, and it allows for distribution of that fee to the employee's attorney and the employer's attorney so long as the employer's attorney was engaged "to represent the employer **in effecting recovery against [the third party]**." *Id*. (emphasis added).

Our courts have interpreted this provision as requiring the employer's attorney to "**actively participate in the prosecution** of the tort action." *Summers*, 867 S.W.2d at 316 (emphasis added). In *Memphis Light, Gas & Water Division v. Ellis*, we found the employer's attorney did not "represent the employer in effecting recovery" when the attorney simply notified employee's counsel of the employer's subrogation interest. No. 02A01-9307-CV-00167, 1994 WL 400768, at *1 (Tenn. Ct. App. Aug. 4, 1994). Similarly, in *Memphis Light Gas & Water Division v. Watson*, we held that an award of attorneys' fees against the employer's subrogation lien was appropriate when the employer's attorney did not file a motion to intervene; did not assist in drafting the complaint; did not participate in the depositions; and did not help prepare for mediation. 584 S.W.3d 863, 872 n.3 (Tenn. Ct. App. 2019); *see also Sircy v. Wilson*, No. M2007-01589-COA-R3-CV, 2008 WL 4830806, at *3 (Tenn. Ct. App. Nov. 5, 2008) (finding the employer's counsel did not "effect" the recovery when the efforts of the employee's attorney "produced the settlement").

In this case, the trial court found Travelers' counsel, Mr. Elliot, "was actively involved in the representation of [Travelers'] interests." Although the parties do not dispute that Mr. Elliot attended the mediation and monitored the proceedings via email, we find this evidence is insufficient to conclude that Mr. Elliot "**actively participate[d] in the prosecution** of the tort action," *Summers*, 867 S.W.2d at 316 (emphasis added), or in "**effecting recovery** against the other person," Tenn. Code. Ann. § 50-6-112(b) (emphasis added).[18]

Alternatively, Travelers contends it withheld filing its intervening complaint in consideration and at the behest of Plaintiffs. The trial court found this significant, noting that HDR insisted Travelers not take "an aggressive role" in the litigation:

> It [is] further concluded that communication by Attorney Rich to counsel for [Travelers], as evidenced in Attorney Elliott's filed exhibits, was to hide

---

[18] In its appellate brief, Travelers contends Mr. Elliot "reviewed fact witness depositions and economist expert disclosures, drafted a mediation position statement on behalf of Travelers, and discussed case strategy for mediation with plaintiff's attorney." These allegations, however, are not supported by any admissible evidence in the record.

the existence of the workers['] compensation carrier during negotiations. . . . Attorney Rich, by insisting Travelers not take an aggressive role, was seeking additional money for the plaintiff, not for Travelers.

Respectfully, we find this fact, standing alone, does not warrant a deviation from the plain language of § 112(b), which provides for an allocation of the fee only when the employer's attorney was actively involved in prosecuting the action. Travelers abstained from intervening; whether it did so begrudgingly at Plaintiffs' request is of no consequence. Additionally, neither Travelers nor its counsel expressed an intent to be actively involved in the prosecution of the tort action or assisting in effecting a recovery against the tortfeasors either by rendering professional services or assisting in funding the prosecution of the action. To the contrary, the record reflects that when Travelers' counsel, Mr. Elliot, notified HDR of Travelers' intent to intervene, Mr. Elliot explained the purpose was simply "to (a) formally put everyone on notice and (b) get on the certificate of service list for pleadings." Thus, there is no evidence upon which to find that Travelers or its counsel "actively participate[d] in the prosection of the tort action," *Summers*, 867 S.W.2d at 316, or in "effecting recovery against the other person," Tenn. Code. Ann. § 50-6-112(b), or were prevented from doing so.

We also note that Travelers contends HDR is not entitled to a fee from Travelers' recovery because HDR did nothing to protect Travelers' interests. We are not persuaded by this argument. The statute provides a fee for attorneys who actively prosecute the action, and "the employee's lawyer is obligated to protect the employer's interest." *Summers*, 867 S.W.2d at 315.

When, as here, the employer's attorney is not entitled to a portion of the "reasonable fee," the employee's attorney is entitled to recover his or her fee not only from "that portion of the recovery belonging to the employee, but also [from] the employer's portion of the recovery." *Aetna Casualty & Surety Co. v. Gilreath*, 625 S.W.2d 269, 274 (Tenn. 1981). Thus, "[a] contingent fee agreement between the employee and his lawyer will apply to the entire recovery, and the attorney's fee will reduce the employer's portion of the recovery by a pro rata amount." *Summers*, 867 S.W.2d at 315–16. Because we have found that Travelers did not engage other counsel to actively prosecute the claim or assist in effecting a recovery against the Ready Mix defendants, HDR is entitled to a fee from Travelers' "portion of the recovery," *id*., which will be equal to the benefits it has paid.

Accordingly, we remand this issue to the trial court with instructions to allocate Plaintiffs' attorneys' fee pro rata between Plaintiffs and Travelers as § 112(b) instructs.

## V. ASSESSMENT OF DISCRETIONARY COSTS

The trial court found that awarding Plaintiffs' post-settlement discretionary costs against Travelers was "fair and equitable under the circumstances," noting Plaintiffs' status as a "widow and two children" and the fact that "Travelers' lien interest in the final order was not reduced or offset for any attorneys' fees incurred by Plaintiffs in prosecuting the family's claims."[19] Because we have reversed the trial court's allocation of attorneys' fees, which was the basis for the assessment of discretionary costs against Travelers, we reverse the assessment of discretionary costs and remand with instructions for the trial court may reconsider the issue pursuant to Tenn. R. Civ. P. 54.04(2) and the principles outlined in *Trundle v. Park*, 210 S.W.3d 575 (Tenn. Ct. App. 2006) as well as other relevant authorities.[20]

## VI. PREJUDGMENT INTEREST, POSTJUDGMENT INTEREST, AND ATTORNEYS' FEES ON APPEAL

Finally, Plaintiffs contend they are entitled to awards of prejudgment interest, postjudgment interest, and attorneys' fees against the Hodges Estate.

---

[19] We acknowledge that Plaintiffs contend Travelers is barred from raising this issue because it did not file a notice of appeal. We find no merit to this contention because Rule 3(h) of the Tennessee Rules of Appellate Procedure clearly provides: "Consistent with Rule 13(a), cross appeals and separate appeals are not required. Consequently, upon the filing of a single notice of appeal in a civil case, issues may be brought up for review and relief pursuant to the rules by any party."

[20] In *Trundle v. Park*, we enumerated several considerations for awarding discretionary costs:

[W]hen deciding whether to award discretionary costs under Tenn. R. Civ. P. 54.04(2), the courts should (1) determine whether the party requesting the costs is the "prevailing party," (2) limit awards to the costs specifically identified in the rule, (3) determine whether the requested costs are necessary and reasonable, and (4) determine whether the prevailing party has engaged in conduct during the litigation that warrants depriving it of the discretionary costs to which it might otherwise be entitled. The courts should not, however, base their decisions to award costs under Tenn. R. Civ. P. 54.04(2) on (1) a desire to punish the losing party, (2) whether the prevailing party is the plaintiff or defendant, or (3) the weight given to a particular witness's testimony.

210 S.W.3d at 582 (quoting *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35–36 (Tenn. Ct. App. 2002)).

In Tennessee, "a party in a civil action may recover attorney fees only if (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception [allows] for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). In this case, the fee agreement provides, "The prevailing party in any action or proceeding to enforce any provisions of this agreement will be awarded reasonable attorney's fees and costs incurred in that action or proceedings or in efforts to negotiate the matter." Because the Hodges Estate prevailed in the enforcement of the fee agreement, Plaintiffs are not entitled to an award of attorneys' fees against the Hodges Estate for the post-settlement litigation.

The award of prejudgment interest is controlled by Tenn. Code Ann. § 47-14-123, which provides:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity . . . .

Plaintiffs contend they are equitably entitled to prejudgment interest because Mr. Hodges delayed the distribution of settlement proceeds with his "unlawful assertion of an attorney's lien." Because we have affirmed the trial court's finding that the fee agreement entitles Mr. Hodges to a reasonable fee, we find an award of prejudgment interest to Plaintiffs is not appropriate in this case.

The award of postjudgment interest is controlled by Tenn. Code Ann. § 47-14-122 provides:

> Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial.

"The purpose of post-judgment interest is to compensate a successful plaintiff for being deprived of the compensation for its loss between the time of the entry of the judgment awarding the compensation until the payment of the judgment by the defendants." *State v. Thompson*, 197 S.W.3d 685, 693 (Tenn. 2006) (quoting *Varnadoe v. McGhee*, 149 S.W.3d 644, 649 (Tenn. Ct. App. 2004)). In this case, Plaintiffs were not successful in their claim against Mr. Hodges. Therefore, Plaintiffs are not eligible for postjudgment interest.

## IN CONCLUSION

Based on the foregoing, we vacate the attorney fee award of $133,333 to the Hodges Estate and remand this issue to the trial court to award "a reasonable fee" that is

based on the relevant facts and factors. We also reverse the mathematical calculation of Travelers' subrogation lien and remand this issue for recalculation pursuant to Tenn. Code. Ann. § 50-6-112 and the facts of this case. Additionally, we reverse the trial court's ruling that Travelers was not liable for any portion of Plaintiffs' attorney's fees, and we remand this issue for an appropriate apportionment of the attorney's fees incurred by Plaintiffs in the prosecution of this action. Finally, we reverse the assessment of discretionary costs against Travelers and remand this issue for reconsideration. Costs of appeal are to be assessed equally, one-third each, among Plaintiffs, the Hodges Estate, and Travelers Indemnity Company.

 

 

_____

FRANK G. CLEMENT JR., P.J., M.S.